**In re Carl M. WEIDEMAN III, Attorney.**

**No. 07–9035–am.**

United States Court of Appeals, Second Circuit.

May 4, 2009.

Present: Hon. JOSÉ A. CABRANES, Hon. ROBERT D. SACK, and Hon. RICHARD C. WESLEY, Circuit Judges.

### ORDER OF GRIEVANCE PANEL

By order filed July 16, 2007, this panel referred Carl M. Weideman III to this Court's Committee on Admissions and Grievances ("the Committee") for investigation of the matters described in that order and preparation of a report on whether he should be subject to disciplinary or other corrective measures. *See* Second Circuit Local Rule 46(h).

After the referral of the matter to the Committee, Weideman was suspended by the Michigan bar for a period of four years, commencing October 27, 2007, based on his improper lending of certain estate funds to himself and his firm, and his misrepresentations concerning those funds to a court, counsel, and a Michigan grievance administrator. *See* Order of Michigan Attorney Discipline Board, filed Sept. 28, 2007. The Committee became aware of the September 2007 suspension order and took the order, and the facts underlying the order, into consideration in its proceedings.

Weideman, on the other hand, did not address any of the evidence considered by the Committee. Although the Committee twice ordered Weideman to show cause why he should not be subject to disciplinary or other corrective measures, and thereafter left a telephone message for him, he failed to respond to any of the Committee's communications and did not participate in the Committee's proceedings. The Committee members assigned to this matter, Eileen M. Blackwood, Terrence M. Connors, and Paul C. Curnin,

thereafter determined that they could proceed without a hearing pursuant to Rule 7(d) of the Committee's Rules. Upon concluding its investigation, the Committee filed in this Court the record of its proceedings and its report and recommendations. Although a copy of the report was served on Weideman in October 2008, he has not responded in any way.

In its report, the Committee recommended as follows: (a) this Court should give the Michigan four-year suspension reciprocal effect, notwithstanding the fact that Weideman is not admitted to this Court's bar; and (b) the Court should further discipline Weideman, in light of the Michigan misconduct and suspension, his repeated violations of this Court's Local Rule 46(d), his failure to cooperate with the Committee's investigation, and the presence of several aggravating factors identified by the Committee. The Committee recommended the following disciplinary measure, which begins with a reciprocal sanction, but extends that sanction to account for all of Weideman's offenses:

> Weideman should not be permitted to seek admission to the Court's bar until the expiration of two years after the conclusion of his suspension from the practice of law in Michigan, assuming he has successfully completed all other conditions of his Michigan suspension, nor be permitted to practice before the Court under any circumstances until he successfully seeks admission to the Court's bar.

Report at 6.

After receipt of the Committee's report, this Court became aware of further discipline imposed on Weideman by the Michigan bar authorities. In July 2008, Weideman's license to practice law in Michigan was revoked as a result of his additional misconduct in three immigration cases. *See* Order of Michigan Attorney Discipline Board, filed June 16, 2008 (attached). According to the complaint filed by the Michigan Grievance Administrator, the immigration cases at issue were, or were intended to be, before the United States Court of Appeals for the Sixth Circuit, the Board of Immigration Appeals, and an unspecified immigration office or officer (presumably an immigration judge or the BIA). *See* Oct. 2007 Complaint and Feb. 2008 Amended Complaint of Michigan Grievance Administrator (attached). We are informed that Weideman has not appealed the Michigan revocation order.

Although the nature of the discipline imposed by Michigan has changed somewhat, it does not alter our view of the Committee's report or require any additional proceedings since the primary thrust of the Committee's recommendation is that Weideman not be permitted to apply for admission to this Court's bar until two years after he is in good standing in Michigan. In any event, in light of the additional information from Michigan, we construe the Committee's report as making that recommendation.

Upon due consideration of the matters described above, it is hereby ORDERED that the Committee's findings and recommendations are adopted by the Court, and Carl M. Weideman III is barred from (a) seeking admission to this Court's bar until the expiration of two years after his full readmission to the Michigan bar as an attorney in good standing, or (b) practicing before this Court, or performing legal services of any kind in any case in this Court, under any circumstances until he successfully seeks admission to the Court's bar. Additionally, Weideman is instructed that he must disclose this order in any future attorney disciplinary proceeding or bar application, or if required by any bar or court rule or order.

The Clerk of Court is directed to release this order to the public by posting it on this Court's web site and providing copies

to members of the public in the same manner as all other unpublished decisions of this Court. The text of this Panel's July 2007 order referring this matter to the Committee, the Committee's report, and the Michigan disciplinary materials referenced above are also to be released to the public, as Appendices to the present order.

Finally, the Clerk of Court is directed to serve a copy of this order on Weideman, this Court's Committee on Admissions and Grievances, the Michigan Attorney Discipline Board, the attorney disciplinary committee for the United States Court of Appeals for the Sixth Circuit, and the attorney disciplinary officials for the Executive Office of Immigration Review.

## APPENDIX 1

### Text of July 2007 order referring Carl M. Weideman III to this Court's Committee on Admissions and Grievances

For the reasons that follow, Carl M. Weideman III is referred to this Court's Committee on Admissions and Grievances for investigation of the matters described below and preparation of a report on whether he should be subject to disciplinary or other corrective measures. *See* Second Circuit Local Rule 46(h). We express no opinion here as to an appropriate disposition. The Committee may, of course, in the first instance, determine the appropriate scope of its investigation.[1]

In April 2007, this Court received a letter from Weideman, informing the Court that he had been "suspended from the practice of law for 30 days, from April 21, 2007 to May 21, 2007," and that he could not appear before the Court during that time period. Accordingly, he requested that the Court adjourn the one matter he currently had pending, *Ndoci v. Gonzales*, No. 06–3755–ag. The letter did not explain the basis for, or identify the jurisdiction that had imposed, the suspension.

This Court usually would initiate its reciprocal disciplinary procedures upon being notified of an attorney's suspension by a state bar or the bar of another court. *See* Second Circuit Local Rule 46(f). However, after a preliminary investigation of the suspension noted in the April 2007 letter, and of Weideman's practice in this Court, we instead request the guidance of the Committee regarding the appropriate approach to the circumstances described below.

After the receipt of Weideman's April 2007 letter, this Court contacted the Attorney Discipline Board for the State of Michigan—where Weideman is licensed—and received copies of the relevant "Order of Suspension with Conditions," No. 06–117–GA (Mar. 30, 2007) ("Order") and the "Report of Tri–County Hearing Panel No. 8 on Discipline," No. 06–117–GA (Mar. 30, 2007) ("Report"). According to the Report, Weideman had been admonished in five prior matters between 2000 and 2005, because of his failure to: "take all necessary measures to ensure clients' matters were not jeopardized," "protect clients' interests," "adequately represent clients' interests," "act with reasonable dispatch and

---

1. Although this Court's records show that a Carl M. Weideman was admitted to its bar in 1988, the listing does not include "III" after the surname. Furthermore, in Weideman's recent notice of appearance in *Gashaj v. Gonzales*, 07–0438–ag, he left blank the space for his date of admission to this Court and, instead, stated that he had been admitted to another, unspecified, "Federal/State Bar" in 1997. *See Gashaj*, 07–0438–ag, Notice of Appearance filed Feb. 7, 2007. As part of its proceedings, the Committee is requested to determine Weideman's status with this Court and whether he is in compliance with Second Circuit Local Rule 46(d).

promptness in representing client and ... keep client reasonably informed," and "communicate with client." *See* Report at 1–2. The Report further indicated that Weideman also had been issued a suspension in another matter, for reasons that were not disclosed, but that the other suspension order was currently under appeal. *Id.* at 2, 6. Although the Report stated that Weideman had claimed to have "changed and improved his office procedures and practices as a result of the prior admonitions," the disciplinary panel found that his testimony on that subject was "very vague and unpersuasive," and that any changes he had made after receiving prior admonitions "were not enough to prevent the professional misconduct which the Panel found in this case." *Id.* at 4. In addition to being suspended from the practice of law for 30 days, Weideman was ordered to, *inter alia,* obtain as a mentor an attorney experienced in the practice of immigration law, who would observe his practice for a one-year period and provide advice on "establishing systems and procedures to ensure that all required court appearances and deadlines are met, to ensure that required filings are made in a timely manner, and to assure regular and full communication with clients." Order at 1.

A review of Weideman's cases in this Court reveals the following information relevant to this referral order. First, contrary to Weideman's assertion in his letter, he has *two* cases pending in this Court. Weideman failed to mention *Zefi v. Ashcroft,* 05–0191–ag, which has been pending without significant activity since its filing in January 2005. According to the docket sheet, in April 2005, Weideman indicated

that he was considering requesting transfer of the petition for review to the Eleventh Circuit; however, the docket sheet does not indicate that any transfer request was filed and a scheduling order was issued in April 2007.

Second, Weideman's briefing was criticized in *Urita v. Gonzales,* 02–4553–ag. In this Court's April 2005 order denying the petition, the panel held, *inter alia,* that the petitioner had waived two of his major arguments by failing to comply with Federal Rule of Appellate Procedure 28. In particular, the panel noted that his argument that the immigration judge's adverse credibility finding was not supported by substantial evidence was deficient in that he merely recited the substantial evidence standard and made conclusory statements about the evidence, without citing to the record or connecting the law to the facts.[2] *See Urita,* 02–4553–ag, Order filed Apr. 15, 2005 [128 Fed.Appx. 810].

Third, this Court recently dismissed *Gashaj v. Gonzales,* 07–0438–ag, in which Weideman is the petitioner's counsel of record, based on the petitioner's failure to file the required addendums to Form C/A. *See Gashaj,* 07–0438–ag, Order filed April 11, 2007. Although it is not clear whether that default constituted misconduct, Weideman did not request an extension of time to comply with the addendum requirement, move to withdraw the case, or respond to the Court's notification that the omission need to be cured. In other appeals where defaults occurred, Weideman's motions for leave to file late briefs consisted primarily of boiler-plate verbiage and factual assertions lacking a clear connection to the relief requested. *Compare Gorvokovic v. Ashcroft,* 03–4023–ag, Mo-

---

**2.** This panel expresses no opinion on the quality of Weideman's brief in *Ndoci v. Gonzales,* No. 06–3755–ag, since that case has yet to be decided by a merits panel of this Court.

However, the Committee is free to review the briefing in that case and reach any conclusion it deems appropriate.

tion filed Nov. 20, 2006, *with Charcani v. Gonzales,* 03–40274–ag, Motion filed May 23, 2005.

Upon due consideration of the matters described above, it is ORDERED that Carl M. Weideman III is referred to this Court's Committee on Admissions and Grievances for investigation and preparation of a report, pursuant to Federal Rule of Appellate Procedure 46, this Court's Local Rule 46(h), and the Rules of the Committee on Admissions and Grievances. The Court requests that the Committee, as part of its deliberations, consider whether some form of oversight of Weideman's practice in this Court is warranted and, if so, whether that oversight should be coordinated in some fashion with the mentoring attorney required by the Michigan Order. *See, e.g., Hua Liu v. Bureau of Citizenship and Immigration Serv.,* No. 03–4640–ag, Order filed Oct. 17, 2005 (appointing special master to oversee attorney's law practice for two years in order to, *inter alia,* certify attorney's compliance with all deadlines and prevent attorney from taking on an unmanageable workload).

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk

By: /s/
Michael Zachary
Supervisory Staff Attorney

### APPENDIX 2

*September 2008 Report of the Committee on Admissions and Grievances (without exhibits)*

### UNITED STATES COURT OF APPEALS

### FOR THE SECOND CIRCUIT

### COMMITTEE ON ADMISSIONS AND GRIEVANCES

*Mary Jo White*

*Chair*

*Debevoise & Plimpton LLP*

*919 Third Avenue*

*New York, NY, 10022*

*Tel: (212) 909–6260*

*Shanya Dingle and Felix Gilman*

*Secretaries*

*Debevoise & Plimpton LLP*

*New York, NY, 10022*

*Tel: (212) 909–6000*

*Email: sjdingle@debevoise.com,*

*fjgilman@debevoise.com*

*Committee Members:*

*Eileen M. Blackwood*

*Terrence M. Connors*

*Paul C. Curnin*

*Deirdre M. Daly*

*Evan A. Davis*

*David B. Fein*

*Hon. Howard A. Levine, Ret.*

*Loretta E. Lynch*

### REPORT & RECOMMENDATION

Re: In re Carl M. Weideman, III, # 07–9035–am

### I. Introduction

By order dated July 16, 2007, the United States Court of Appeals for the Second Circuit (the "Court") referred Carl. M. Weideman, III, to this Committee for investigation of his conduct before the Court and for preparation of a report on whether

he should be subject to disciplinary or other corrective measures.

Weideman has been suspended by the State of Michigan Attorney Review Board for four years for serious misconduct involving funds entrusted to him as an executor of an estate and misrepresentations regarding the availability of those funds. Additionally, Weideman has never been admitted to the Court's bar despite repeated appearances before the Court and he failed to cooperate with the Committee's investigation into his conduct. In light of this serious misconduct, the Committee recommends that Weideman not be permitted to practice before the Court until two years after the conclusion of his suspension in Michigan. The following constitutes the Committee's report and recommendation to impose discipline on Weideman.

## II. The Referral Order

The Court referred Weideman to the Committee by order dated July 16, 2007 (the "Referral Order"). According to the Referral Order, Weideman informed the Court in April 2007 that he had been suspended from the practice of law in Michigan for thirty days (April 21, 2007 to May 21, 2007). After receipt of Weideman's letter, the Court obtained from the State of Michigan Attorney Discipline Board the March 30, 2007 Order of Suspension with Conditions and the March 30, 2007 Report of Tri–County Hearing Panel No. 8 on Discipline, No. 06–117–GA (the "Report").[1] According to the Report, Weideman had been admonished in five prior matters between 2000 and 2005 because of his failure to protect his clients' interests and ade-

quately represent his clients. In addition to suspending Weideman for thirty days, the Attorney Discipline Board also ordered Weideman to obtain a mentor with immigration law experience to monitor Weideman's practice for one year and provide advice on establishing procedures to better represent his clients.

The Referral Order also noted concerns about Weideman's conduct in cases pending in the Second Circuit. No activity had occurred in *Zefi v. Ashcroft*, 05–0191–ag, between January 2005, when the petition for review was filed, and over two years later when the Court entered the Referral Order in July 2007.[2] In *Urita v. Gonzales*, 02–4553–ag, the Court's April 2005 order denying the petition for review criticized Weideman's briefing. The Court held that Weideman's client had waived two of his most significant arguments by failing to comply with Federal Rule of Appellate Procedure 28, which requires an appellant's brief to contain, among other things, the "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies." Fed. R.App. P. 28(a)(9)(A). In *Gashaj v. Gonzales*, 07–0438–ag, the Court dismissed Weideman's client's petition for review based on the petitioner's failure to file the required addendums to Form C/A.

Additionally, the Referral Order indicated that a "Carl M. Weideman" was admitted to the Court's bar in 1988, but the listing does not include "III" after the surname. The Court requested that the Committee "determine Weideman's status with [the] Court and whether he is in compliance with Second Circuit Local Rule 46(d)," which requires counsel of record

---

1. The Order of Suspension with Conditions and the Report are appended to this report and recommendation as Exhibits A and B.

2. The case was transferred to the Eleventh Circuit by stipulation in September 2007.

for all parties to be admitted to practice before the Court.

As part of its referral, the Court requested the Committee to "consider whether some form of oversight of Weideman's practice in this Court is warranted and, if so, whether that oversight should be coordinated in some fashion with the mentoring attorney required by the Michigan Order."

### III. This Disciplinary Proceeding

On March 21, 2008, this Committee issued an Order to Show Cause regarding Weideman's conduct as alleged in the Referral Order. The Order to Show Cause was sent to the address Weideman listed on his notice of appearance in *Gashaj v. Gonzales*, 07–0438–ag, which is the same address on the letterhead of Weideman's April 2007 letter to the Court. After Weideman failed to respond to the Order to Show Cause, the Committee sent a second notice to Weideman on April 30, 2008. The April 30, 2008 letter informed Weideman that if he did not respond by May 13, 2008, the Committee would proceed without the benefit of his response. The Committee also attempted to reach Weideman at the telephone number he listed on his notice of appearance in *Gashaj v. Gonzales*, 07–0438–ag. Weideman failed to respond to the Order to Show Cause and follow up letter, did not return the telephone message left for him, and has not otherwise contacted the Committee. Therefore, a sub-committee consisting of

Eileen M. Blackwood, Terrence M. Connors, and Paul C. Curnin elected to proceed in this matter without a hearing in accordance with Rule 7(d) of the Rules of the Committee on Admissions and Grievances.

### IV. Factual Background

Shortly after the Committee commenced its investigation into this matter, we learned that Weideman has once again been suspended from the practice of law by the State of Michigan Attorney Review Board. According to the Attorney Review Board's September 28, 2007 Opinion, Weideman breached his fiduciary obligations, as executor of a California decedent's estate, by loaning estate funds to himself and his law firm, and made misrepresentations regarding the availability of the funds to a California court, to counsel, and to the Grievance Administrator in Michigan.[3] As a result, Weideman was suspended from the practice of law for four years commencing on October 27, 2007.[4]

Additionally, Weideman appears never to have been admitted to the Court's bar. According to the Referral Order, a "Carl M. Weideman" was admitted to the Court's bar in 1988, but the listing does not include "III" after the surname. The Committee contacted the Michigan State Bar, where Weideman's office is located, and learned that Carl M. Weideman, III, was not admitted to the Michigan bar until November 1992.[5] Therefore, Weideman

---

**3.** A copy of the September 28, 2007 Opinion is appended to this memorandum as Exhibit C.

**4.** A certified copy of the September 28, 2007 Order Increasing Discipline to a Suspension of Four Years is appended to this memorandum as Exhibit D. A copy of the Michigan Supreme Court's order denying Mr. Weideman's appeal is appended as Exhibit E. The

Attorney Discipline Board's January 16, 2008 Final Notice of Suspension is appended as Exhibit F.

**5.** A copy of a facsimile from the Michigan State Bar setting forth Mr. Weideman's admission date is appended to this memorandum as Exhibit G.

appears not to be the "Carl M. Weideman" that is admitted to the Second Circuit's bar. Nevertheless, he has appeared repeatedly before the Court, including in *Gashaj v. Gonzales,* 07–0438–ag; *Ndoci v. Gonzales,* 06–3755–ag; *Zefi v. Ashcroft,* 05–0191–ag; *Urita v. Gonzales,* 02–4553–ag; *Gorvokovic v. Ashcroft,* 03–4023–ag; and *Paluca v. Ashcroft,* 03–4863–ag.[6]

## V. Legal Standard

Under the Rules of this Committee,

An attorney may be subject to discipline or other corrective measures for any act or omission that violates the rules of professional conduct or responsibility of the state or other jurisdiction where the attorney maintains his or her principal office, or the rules of professional conduct of any other state or jurisdiction governing the attorney's conduct. An attorney may also be subject to discipline or other corrective measures for any failure to comply with a Federal Rule of Appellate Procedure, a Local Rule of the Court, an order or other instruction of the Court, or a rule of professional conduct or responsibility of the Court, or any other conduct unbecoming a member of the bar.

Rules of the Committee on Admissions and Grievances, Rule 4.

"A court of appeals may discipline an attorney who practices before it for conduct unbecoming a member of the bar or for failure to comply with any court rule." Fed. R.App. P. 46(c). "Conduct unbecoming a member of the bar" may include any conduct "contrary to professional standards that show[s] an unfitness to discharge continuing obligations to clients or

courts, or conduct inimical to the administration of justice," *In re Snyder,* 472 U.S. 634, 645, 105 S.Ct. 2874, 86 L.Ed.2d 504 (1985). For "[m]ore specific guidance," we may look to "case law, applicable court rules, and 'the lore of the profession,' as embodied in codes of professional conduct." *Id.* at 646 n. 7, 105 S.Ct. 2874.

"Any finding that an attorney has engaged in misconduct or is otherwise subject to corrective measures must be supported by clear and convincing evidence." Rules of the Committee on Admissions and Grievances, Rule 7(h). Once misconduct has been established, in determining the sanction to be imposed, the Committee should consider: (a) the duty violated; (b) the lawyer's mental state; (c) the actual or potential injury caused by the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors. American Bar Association's Standards for Imposing Lawyer Sanctions ("ABA Standards") § 3.0. The Committee may recommend to the Court's Grievance Panel a range of sanctions, including disbarment, suspension, public or private reprimand, monetary sanction, removal from *pro bono* or Criminal Justice Act panels, referral to other disciplinary bodies, supervision by a special master, counseling or treatment, or "such other disciplinary or corrective measures as the circumstances may warrant." Rules of the Committee on Admissions and Grievances, Rule 6.

## VI. The Alleged Misconduct

### A. The Michigan Suspension

Pursuant to Rule 46 of the Federal Rules of Appellate Procedure, a member of a circuit court's bar is subject to suspension if the member has been suspended in

---

**6.** Carl M. Weideman, Jr., who appears to be Mr. Weideman's father, has been admitted to practice in Michigan since 1950 and may be the "Carl M. Weideman" admitted to the Court's bar.

any other court after the member is given an opportunity to show good cause why he should not be suspended. Fed. R.App. P. 46(b)(1)(A) & (2). According to the Second Circuit's Local Rule 46:

> In all cases in which an order disbarring an attorney or suspending the attorney from practice (whether or not on consent) has been entered in any other court of record, federal or state, and a certified copy thereof has been filed in this court, the clerk shall enter an order for the court, to become effective twenty-four days after the date of service upon the attorney unless sooner modified or stayed, disbarring the attorney or suspending the attorney from practice in this court upon terms and conditions comparable to those set forth by the other court of record.

Local Rule 46(f)(1). The attorney may move the Court for a modification or revocation of the order within twenty days of its service. Local Rule 46(f)(2).

Federal courts conduct only a "limited review" before imposing reciprocal discipline. *Selling v. Radford,* 243 U.S. 46, 50–51, 37 S.Ct. 377, 61 L.Ed. 585 (1917). Reciprocal discipline will not be imposed only if there is "(1) absence of due process in the state procedure, (2) substantial infirmity in the proof of lack of private and professional character, or (3) 'some other grave reason' sufficient to indicate that reciprocal disbarment was inconsistent with 'principles of right and justice.'" *In re Tidwell,* 295 F.3d 331, 334 (2d Cir.2002) (quoting *Selling,* 243 U.S. at 51, 37 S.Ct. 377).

Weideman has been suspended from the practice of law for four years in Michigan. If he were a member of the Court's bar, this suspension would trigger a reciprocal suspension. As set forth below, however, Weideman is not a member of the Court's bar.

**B. Appearances Before the Court Without Being Admitted to the Court's Bar**

Local Rule 46(d) provides in relevant part: "Counsel of record for all parties must be admitted to practice before this court. Oral argument may be presented only by attorneys admitted to practice before this court." Weideman has repeatedly violated this rule as set forth above.

**VII. Aggravating Factors**

In recommending discipline, the Committee has considered several aggravating factors. They include (1) Weideman's prior disciplinary offenses; (2) a pattern of misconduct; and (3) his multiple offenses. ABA Standards § 9.22(a), (c), & (d). The Committee also considers Weideman's failure to cooperate with the Committee's investigation to be an aggravating factor, as well as an independent basis for discipline. ABA Standards § 9.22(e); *cf. Committee on Grievances of the U.S. Dist. Court for Eastern Dist. of New York v. Feinman,* 239 F.3d 498 (2d Cir.2001) (affirming discipline imposed in part for failure to cooperate with district court's disciplinary proceeding).

The Committee is not aware of any mitigating factors.

**VIII. Recommendation**

Weideman's conduct clearly warrants discipline. The fact that Weideman is not admitted to the Court's bar should not stop the Court from giving reciprocal effect to Weideman's Michigan suspension. In light of that suspension and the reasons for which it was imposed, Weideman's repeated violations of Local Rule 46(d), his failure to cooperate with the Committee's investigation, and the presence of several aggravating factors, Weideman should not be permitted to seek admission to the

Court's bar until the expiration of two years after the conclusion of his suspension from the practice of law in Michigan, assuming he has successfully completed all other conditions of his Michigan suspension, nor be permitted to practice before the Court under any circumstances until he successfully seeks admission to the Court's bar.[7]

Respectfully Submitted,

/s/

Member of the Committee

September 19, 2008

### APPENDIX 3

*Relevant documents from Michigan attorney discipline authorities*

STATE OF MICHIGAN

**Attorney Discipline Board**

GRIEVANCE ADMINISTRATOR, Attorney Grievance Commission, Petitioner/Appellant/Cross–Appellee,

v

CARL M. WEIDEMAN, III, P 47032, Respondent/Appellee/Cross–Appellant.

Case No. 05–79–GA

### ORDER INCREASING DISCIPLINE TO A SUSPENSION OF FOUR YEARS

Issued by the Attorney Discipline Board

211 W. Fort St., Ste. 1410, Detroit, MI

On January 25, 2007, Tri–County Hearing Panel # 22 of the Attorney Discipline Board issued an order suspending respon-

dent's license to practice law in Michigan for a period of 90 days commencing February 16, 2007. The Grievance Administrator filed a petition for review on January 31, 2007 and respondent filed a cross-petition for review on February 12, 2007. The Attorney Discipline Board conducted review proceedings in accordance with MCR 9.118 and is otherwise fully advised,

NOW THEREFORE,

**IT IS ORDERED** that, for the reasons set forth in the attached opinion, discipline in this case is increased from a suspension of 90 days to a **SUSPENSION OF RESPONDENT'S LICENSE TO PRACTICE LAW FOR FOUR YEARS EFFECTIVE** *OCTOBER 27, 2007* and until respondents reinstatement in accordance with MCR 9.123(B) and (C) and MCR 9.124.

**IT IS FURTHER ORDERED** that the effective date of this order is *October 27, 2007.*

**IT IS FURTHER ORDERED** that the automatic stay of discipline under MCR 9.115(K) shall remain in effect until *October 27, 2007.*

**IT IS FURTHER ORDERED** that from the effective date of this order and until reinstatement in accordance with the applicable provisions of MCR 9.123, respondent is forbidden from practicing law in any form; appearing as an attorney before any court, judge, justice, board, commission or other public authority; or *holding himself out as an attorney by any means.*

---

**7.** In the Referral Order, the Court asked the Committee to consider "whether some form of oversight of Weideman's practice in this Court is warranted and, if so, whether that oversight should be coordinated in some fashion with the mentoring attorney required by the Michigan Order." At the time of the Referral Order, however, Weideman had not yet been suspended in Michigan for four years

and it is unclear if Weideman is still required to obtain a mentor in Michigan. Moreover, the misconduct for which we are recommending punishment does not lend itself to correction by the assistance of a mentoring attorney. Therefore, the Committee does not recommend that the Court require Mr. Weideman to obtain a mentor.

**IT IS FURTHER ORDERED** that respondent shall, in accordance with MCR 9.119(A), within seven days after the effective date of this order, notify all of his active clients, in writing, by registered or certified mail, return receipt requested, of the following:

1. the nature and duration of the discipline imposed;
2. the effective date of such discipline;
3. respondent's inability to act as an attorney after the effective date of such discipline;
4. the location and identity of the custodian of the clients' files and records which will be made available to them or to substitute counsel;
5. that the clients may wish to seek legal advice and counsel elsewhere; provided that if respondent is a member of a law firm, the firm may continue to represent each client with the client's express written consent;
6. the address to which all correspondence to respondent may be addressed.

**IT IS FURTHER ORDERED** that in accordance with MCR 9.119(B), respondent must, on or before the effective date of the order, in every matter in which respondent is representing a client in litigation, file with the tribunal and all parties a notice of respondent's disqualification from the practice of law.

**IT IS FURTHER ORDERED** that respondent shall, within 14 days after the effective date of the order, file with the Grievance Administrator and the Attorney Discipline Board an affidavit of compliance as required by MCR 9.119(C).

**IT IS FURTHER ORDERED** that respondent's conduct after the entry of this order but prior to its effective date, shall be subject to the restrictions set forth in MCR 9.119(D); and respondent's compensation for legal services shall be subject to the restrictions described in MCR 9.119(F).

**IT IS FURTHER ORDERED** that respondent shall, on or before *October 27, 2007,* pay court reporting costs incurred by the Board for the review hearing conducted on May 17, 2007 in the amount of $106.50. (These costs are in addition to the unpaid costs of $7,607.19 assessed in the order of the hearing panel.) Costs may be paid by check or money order made payable to the State Bar of Michigan but submitted to the Attorney Discipline Board, 211 West Fort St., Ste. 1410, Detroit, MI 48226, for proper crediting.

ATTORNEY DISCIPLINE BOARD

By: /s/ William P. Hampton
William P. Hampton, Chairperson

DATED: September 28, 2007

Board members William P. Hampton, George H. Lennon, Hon. Richard F. Suhrheinrich, William J. Danhof and William L. Matthews, C.P.A. concur in this decision.

Board members Lori McAllister, Rev. Ira Combs, Jr., and Billy Ben Baumann, M.D. did not participate.

Board member Andrea L. Solak was voluntarily recused.

STATE OF MICHIGAN

**Attorney Discipline Board**

Grievance Administrator,

Petitioner/Appellant/Cross–Appellee,

v

Carl M. Weideman, III, P 47032,

Respondent/Appellee/Cross–Appellant,

Case No. 05–79–GA

Decided: September 28, 2007

*Appearances:*

Nancy R. Alberts, for the Grievance Administrator, Petitioner/Appellant/Cross-appellee

Robert H. Golden, for the Respondent/Appellee/Cross–Appellant

### BOARD OPINION

The hearing panel found that respondent breached his fiduciary obligations, as executor of a California decedent's estate, in loaning the estate funds to himself and/or his firm to finance litigation and pay personal debts, and made misrepresentations regarding the availability of the funds to the California court, to counsel, and to the Grievance Administrator. The panel imposed a suspension of 90 days. The Grievance Administrator filed a petition for review arguing that the panel erred in failing to find that respondent violated the criminal law of California, and in failing to impose greater discipline in light of respondent's mishandling of estate funds and his misrepresentations. Respondent filed a cross-petition arguing that the panel had no jurisdiction to consider respondent's conduct as a California fiduciary, or to determine whether his conduct violated California law, and that the panel erred in concluding respondent lied to others about the amount of estate assets in respondent's trust account. We affirm the panel's findings of misconduct and modify the order of discipline to require a suspension of four years.

### I. Factual Background.

Robert H. Weideman lived and died in California. Respondent, a Michigan lawyer, practiced law with his father, who was the first cousin of the decedent. Respondent was appointed executor of the estate in February, 2001. The amended formal complaint charged respondent with various misconduct stemming from respondent's "loan" of estate funds to himself as a shareholder of Weideman & Weideman, P.C.

We will set forth in some detail the chronology of respondent's receipt of the estate funds, his use of the funds, the delay in distributing assets to beneficiaries, misrepresentations to the California court and counsel, a misleading response to the Request for Investigation, and, ultimately, payment of estate proceeds to the most assertive beneficiaries who had retained counsel. This payment was made only after respondent received funds from the settlement of an unrelated matter handled by his firm.

On June 30, 2001, respondent's IOLTA account had a balance of $10,927.88. On or about July 2, 2001, respondent received $264,905.20 on behalf of the Weideman estate, which he deposited into his IOLTA account contrary to the requirements of the California Probate Code. During July, 2001, varying amounts were withdrawn and paid to Weideman and Weideman PC, and $25,000 was transferred to the Savings Bank of Albania to repay a personal loan made to respondent by his brother-in-law. As of July 31, 2001, the balance in respondent's IOLTA account was $224,920.08.

Respondent is not a California attorney. He retained California counsel to assist in probating the estate. In August, 2001, respondent's counsel wrote the first of several letters requesting accounting information from respondent. On March 18, 2002, counsel filed a motion for leave to withdraw as attorneys for the executor reciting respondent's failure to answer these letters. The motion further stated that a final certified letter was sent January 25, 2002, that respondent's father replied on February 7, 2002 "indicating that the Executor was ready to submit the accounting information," and that as of March 18, 2002, the date the motion was filed, no

such information had been received by counsel.

Finally, on September 12, 2002, respondent filed, through counsel, a First and Final Account and Report of Executor, Petition for Approval cf Accounts, etc. The Account, signed by respondent under the penalty of perjury, showed cash on hand in the amount of $258,888.23. On that day, September 12, 2002, the balance in respondent's IOLTA account was $171,714.01.

In February, 2003, respondent's counsel renewed his motion to withdraw explaining that respondent now refused to sign a supplemental accounting. Respondent filed, in pro per, objections to his counsel's fee requests and a request that he be allowed to distribute only half of the estate's cash to beneficiaries. On that day, May 5, 2003, respondent's IOLTA account had a balance of $147,202.78.

On May 7, 2003, the California court issued an Order Settling the First and Final Account, etc., which recited that the "total value of the property on hand is $266,609.48, of which $258,888.23 is cash." Respondent was directed to distribute the decedent's entire residuary estate. Respondent did not do so. On December 4, 2003, the surety company filed petition requiring various relief including deposit into court of estate funds. On January 6, 2004, various beneficiaries represented by California attorney James Morris filed an application for order to show cause regarding respondent's failure to obey the court's order authorizing final distribution. Attorney Morris also filed a Request for Investigation reciting the history of respondent's refusal to distribute the estate to beneficiaries and stating Morris's suspicion that respondent may have commingled and misappropriated estate funds. The Request for Investigation was received by the Attorney Grievance Commission on February 2, 2004.

On March 29, 2004, respondent deposited a check for $269,292.03 into his IOLTA account which check was from the settlement of an unrelated lawsuit in which respondent represented one Harold Kowal. On or about April 30, 2004, respondent issued a check to James Morris, attorney for several beneficiaries, in the sum of $191,552.44 for distribution to his clients.

Respondent's answer to the Request for Investigation does not respond to the allegations of misappropriation and attaches an account certification letter from Comerica dated April 5, 2004, and showing that as of April 2, 2004, there was $423,324.74 in the Weideman and Weideman PC IOLTA.

## II. Misconduct Found By The Hearing Panel.

During an investigatory statement under oath at the offices of the Attorney Grievance Commission on January 19, 2005, respondent produced a "Line of Credit Agreement" reciting that "[respondent] is desirous of financing" the Kowall litigation in Oakland Circuit Court, and that the estate "has money available for which it would be preferable to earn interest." The document provides that "for the duration of [the] case" the estate shall make funds available to respondent "as he shall deem appropriate for the prosecution of [the case]." Interest at 7% per annum is provided and respondent signed as executor and again as the president of Weideman and Weideman, P.C. The only beneficiary, indeed the only person, respondent told about the loan was his father. At the time, respondent's father was engaged in the practice of law with him. As we have set forth above, respondent did not keep the estate funds in a separate account and preserve them, but instead placed them in

the Weideman and Weideman P.C. IOLTA account and used the funds to pay business and personal expenses.

The hearing panel concluded that respondent violated MRPC 3.3(a)(1), (2), and (4)[1] as charged in Count One of the complaint:

> [R]espondent represented to the probate court that he had cash on hand belonging to the estate in the amount of $258,888.23. Respondent knew at the time that he made the representation to the California probate court that he did not have cash on hand in this amount. As a result, by making this representation and failing to inform the California probate court of the deposit of the funds in his law firm's IOLTA and subsequent loan to himself, respondent misrepresented the amount of cash on hand belonging to the estate. [HP Report, p 7.].

The panel also found, with respect to Count Two, that "respondent did intentionally make false, misleading and deceptive statements to attorneys Allard and Gibson" when he "represented to these attorneys, in conjunction with the administration of the probate estate, that these funds were in cash and were available for distribution." In reality, the panel found, and respondent admitted, that he had "loaned those funds to himself,"

Count Three charged that respondent failed "to fully and fairly disclose all facts and circumstances pertaining to the alleged misconduct in answer to [the] request for investigation" filed by California attorney James Morris by engaging in "false, misleading and deceptive behavior in attaching the April, 2004 account certification, and failure to disclose that $269,292.03 did not belong to [the] estate but were settlement proceeds from a separate lawsuit" (HP Report, p 8). The panel found misconduct here as well, specifically that the certification

> was submitted by respondent for the purpose of misleading and deceiving the Grievance Administrator into believing that the law firm's IOLTA account had sufficient funds to reimburse the probate estate for the funds deposited into the IOLTA. In this regard, respondent failed to respond to the specific question as to the balance in the IOLTA at an earlier time because to do so would have revealed that the IOLTA had insufficient funds to reimburse the probate estate for the funds deposited into the IOLTA. [HP Report, p 9.]

The funds from the settlement of the Kowal litigation (which had yet to be disbursed to clients and those to whom costs were owed) amounted to $269,292.03. Subtracting that from $423,324.74 (the amount shown on the certification), leaves $154,032.71. The estate funds, had they not been invaded by respondent, would have totaled $258,888.23. Thus, respondent's account was in deficit by at least $104,855.52 as of the date of his answer to the request for investigation in April, 2004. The panel found that the conduct established under Count Three was in violation of MCR 9.104(A)(1)–(4) and MRPC 8.1(a)(1) and (2) and 8.4(a)–(c).

---

1. See Rule: 3.3 Candor Toward the Tribunal
   (a) A lawyer shall not knowingly:
   (1) make a false statement of material fact or law to a tribunal;
   (2) fail to disclose a material fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client;
   ... or
   (4) offer evidence that the lawyer knows to be false. If a lawyer has offered material evidence and comes to know of its falsity, the lawyer shall take reasonable remedial measures.

The hearing panel next found that respondent committed misconduct alleged in Count Four by:

(a) placing estate funds in his law firm's IOLTA and not in a bank account payable in United States funds, (b) commingling estate funds with professional funds in his law firm's IOLTA, (c) using estate funds for personal and professional purposes, and (d) making a loan to himself with estate funds. [HP Report, p 9.]

The panel determined that this conduct violated various provisions of the California Probate Code constituted "self dealing," and that "respondent violated his fiduciary obligations to the estate," all in violation of MCR 9.104(A)(1)–(4) and MRPC 8.4(a)–(c) as alleged in the formal complaint.

In sum, the panel expressly declined to find that respondent commingled estate funds with his own as alleged in Count One. Nor did the panel find a violation of former MRPC 1.15(a)–(c), as alleged in Count Five, which asserted that a deficiency in respondent's trust account existed following the deposit of the estate funds and that commingling and misappropriation were the result. However, the panel did find that respondent violated his fiduciary duties with respect to the handling of the estate funds as described more fully above. The Administrator does not seek review of the panel's factual findings. Respondent's arguments as to the panel's factfinding simply ask us to weigh the evidence anew and amend the panel's credibility determinations. These arguments are rejected and will not be discussed further. *Grievance Administrator v. Carrie L.P. Gray,* 93–250–GA (ADB 1996) ("it is not the Board's function to substitute its own judgment for that of the panels' or to offer a de novo analysis of the evidence"), lv den 453 Mich. 1216 (1996).

## III. Panel Rulings Regarding Violation of California Probate and Criminal Law.

The hearing panel rejected respondent's arguments that the Michigan Rules of Professional Conduct do not apply to his conduct while acting as a California executor and that the panel had no authority to determine whether respondent violated California law. The panel concluded that respondent's acts violated the California Probate Code, but was "not persuaded that the Grievance Administrator has met its burden of proof that respondent violated either California or Michigan criminal law."

On review, respondent offers cursory attacks on the panel's jurisdiction. A conclusory recitation of alleged error is insufficient to trigger this Board's review. *See Grievance Administrator v. Frederick A. Potman,* 93–47–GA; 94–157–GA (ADB 1997), citing *Mitcham v. City of Detroit,* 355 Mich. 182, 203, 94 N.W.2d 388 (1959), and *Taunt v. Moegle,* 344 Mich. 683, 686–687, 75 N.W.2d 48 (1956). While we consider respondent's arguments abandoned, and without exception baseless, we will briefly discuss them.

First, respondent argues:

There is no authority anywhere in the Michigan Court Rules, statutes or case law which gives the Michigan Grievance Administrator jurisdiction to complain of, and the Attorney Discipline Board to hear, violations of other states [sic] criminal or probate code in court proceedings taking place in that other state. In fact the only mention of violations which take place in other states in the jurisdiction granting sections of the Michigan Court Rules is to be found at MCR 9.104(B):

"Proof of an adjudication of misconduct in a disciplinary proceeding by

another state or a United States court is conclusive proof of misconduct in a disciplinary proceeding · in Michigan ..." [Respondents' Brief on Appeal, pp 7–8.]

This argument completely ignores MCR 9.104(A)(5) in which the Michigan Supreme Court plainly defined misconduct to include "conduct that violates a criminal law of *a state* or of the United States" (emphasis added). The panel's ruling from the bench[2] and its written Report are firmly and correctly predicated on MCR 9.104(A)(5). Respondent's argument also disregards the plain language of MRPC 8.4(c) stating that it is misconduct to "engage in ... violation of the criminal law...." Notwithstanding respondent's argument, this Board and its panels have in fact found misconduct based on violation of the criminal law of other states,[3] as well as upon violation of the probate law of another state.[4] This is hardly remarkable; other jurisdictions follow a similar approach. See, e.g., *In re Slattery*, 767 A.2d 203 (D.C.App., 2001) ("In construing the phrase 'criminal act' for purposes of Rule 8.4(b), this court may properly look to the law of any jurisdiction that could have prosecuted the respondent for the misconduct," and conviction is not necessary to pursue disciplinary charges.)

Also, respondent argues that either our Rules of Professional Conduct or the authority of the Board and panels cannot have "extraterritorial application." Given the utter lack of support advanced for such an argument, as well as the commentary of noted authorities in this area to the contrary, we find respondent's argument to be groundless:

A state disciplinary authority has, in general, the power to discipline a person admitted to the bar in that jurisdiction even though the acts complained of occurred outside the jurisdiction....

The rationale for the extraterritorial application of ethics rules is easy to understand. The purpose of lawyer discipline is not to punish (although the lawyer may be deprived of her livelihood) but rather to "seek to determine the fitness of an officer of the court to continue in that capacity and to protect the courts and the public from the official ministrations of persons unfit to practice."

Given this rationale, if the lawyer engages in improper conduct—even if she engages in the conduct while not acting as a lawyer (e.g., lying to secure a real estate license), and even if the improper conduct occurs outside of the jurisdiction of Stat A, that conduct still reflects on the ability of that lawyer to practice in State A. The lawyer's admission to practice in State A (even thought State A is not the site of her improper act) gives

---

2. Tr 8/9/2006, p 112.

3. See *Grievance Administrator v. Peter Barbara*, DP 62–86 (ADB 1988) (discipline based on Nevada convictions). See also *Grievance Administrator v. Paul Van Assche*, 97–30–GA (ADB 1998) (asserting jurisdiction over Michigan lawyer alleged in formal complaint, i.e., neither a reciprocal or judgment-of-conviction proceeding, to have violated MRPC 8.4(b) [violation of criminal conduct reflecting adversely on fitness, etc.] arising out of Florida OUIL conviction; Maine conviction also considered).

4. In *Grievance Adminstrator v. Richard A. Neaton*, 00–78–GA (HP 2001), a hearing panel imposed discipline (revocation) upon a lawyer who misappropriated funds held in trust as a fiduciary based upon, among other things, the respondent's failure to account for or deliver funds as ordered by the Washington County Circuit Court in Maryland. The respondent did not appear and was in default, but the panel nonetheless took testimony and issued its report in which no jurisdictional impediment was judicially noticed by the panel.

State A the jurisdiction to discipline the lawyer. [Ronald D. Rotunda & John S. Dzienkowski, *Legal Ethics: The Lawyer's Deskbook on Professional Responsibility* 2007–2008, § 8.5–1, pp 1213–1214. Footnotes omitted.]

Moreover, to the extent it even makes sense to try to pin down the situs of respondent's acts and omissions, the misconduct clearly took place in Michigan. Michigan is where the Weideman and Weideman, P.C. IOLTA account was located. Some misrepresentations may have been repeated in California, but they originated here.[5] Finally, the misleading conduct during the AGC investigation clearly took place in Michigan. Respondent's arguments in this regard, and the argument that this Board and the panel cannot act where a California court has not acted, are specious.

The Administrator argues that the hearing panel's findings that respondent secretly loaned estate funds in violation of the California Probate Code should also have resulted in a finding that respondent violated Section 506 of the California Penal Code.[6] Citing the Code[7] and caselaw, the Administrator contends that the intent to restore funds is not a defense to a charge under this section. This proposition appears to be correct. Indeed, additional cases not cited provide support for the argument that a California criminal law violation might be established if fraudulent intent within the meaning of that state's jurisprudence could be established. For example, in *People v. Talbot*, 220 Cal. 3, 28

P.2d 1057 (1934), the California Supreme Court stated:

> The element of felonious intent in every contested criminal case must necessarily be determined from the facts and circumstances of the case.... *"An officer or agent of a corporation cannot take money of the corporation which is entrusted to him, or which comes into his possession by virtue of his office or agency, and use it even temporarily for his personal benefit and avoid criminal responsibility by calling it a loan.* The law calls such a transaction a wrongful conversion, from which a fraudulent intent can be inferred." [220 Cal. at 15, 28 P.2d 1057; citations and internal quotation marks omitted; emphasis added.]

And, in *Seavey v. State Bar of California*, 4 Cal.2d 73, 47 P.2d 281 (1935), an attorney was convicted under Section 506 of the Penal Code for secretly loaning funds he managed under a power of attorney during liquidation of a partnership. Arguments that he was acting in the best interest of the principals and did not himself profit were unavailing.

However, we decline to disturb the panel's determination regarding the alleged violation of the California Penal Code given that the issue of "fraudulent intent" within the meaning of California law was not squarely addressed, and in light of the panel's unchallenged findings as to respondent's intent (discussed further in the following section).

---

**5.** Respondent has made no effort to identify from the record any that were made exclusively in California.

**6.** "Every trustee ... attorney, agent ... executor ... or person otherwise entrusted with ... property for the use of another person, who fraudulently appropriates it to any use or purpose not in the due and lawful execution of his trust, or secretes it with a fraudulent

intent to appropriate it to such purpose ... is guilty of embezzlement." [California Penal Code, § 506.]

**7.** See California Penal Code, §§ 512, 513 (voluntary restoration of funds prior to an information or indictment may be mitigating but is no defense to criminal charges).

## IV. Appropriate Level of Discipline.

Our Supreme Court has directed the Board and hearing panels to use the American Bar Association (ABA) Standards for Imposing Lawyer Sanctions when determining the appropriate level of discipline for misconduct *Grievance Administrator v. Lopatin,* 462 Mich. 235, 612 N.W.2d 120 (2000). The Court explained that

> The inquiry begins with three questions:
>
> (1) What ethical duty did the lawyer violate? (A duty to a client, the public, the legal system or the profession?)
>
> (2) What was the lawyer's mental state? (Did the lawyer act intentionally, knowingly, or negligently?)
>
> (3) What was the extent of the actual or potential injury caused by the lawyer's conduct? (Was there a serious or potentially serious injury?)

[*Lopatin,* 462 Mich. at 239–240, 612 N.W.2d 120 (quoting ABA Standards, p 5).]

We set forth the following steps of the analysis under the Standards in *Grievance Administrator v. Ralph E. Musilli,* No. 98–216–GA (ADB 2000):

> Next, the hearing panel examines recommended sanctions based the answers to these questions. *Lopatin,* 462 Mich. at 240, 612 N.W.2d 120; ABA Sanctions, pp 3, 4–5.
>
> Then, aggravating and mitigating factors are considered. *Id.*
>
> And, in Michigan, the final step of the process involves a consideration of other factors, if any, which may make the results of the foregoing analytical process inappropriate for some articulated reason. As the Court explained in directing this Board and the panel's to follow the Standards:

We caution the ADB and hearing panels that our directive to follow the ABA standards is not an instruction to abdicate their responsibility to exercise independent judgment. Where, for articulated reasons, the ADB or a hearing panel determines that the ABA standards do not adequately consider the effects of certain misconduct, do not accurately address the aggravating or mitigating circumstances of a particular case, or do not comport with the precedent of this Court or the ADB, it is incumbent on the ADB or the hearing panel to arrive at, and explain the basis for, a sanction or result that reflects this conclusion. [*Lopatin,* 462 Mich. at 248 n. 13, 612 N.W.2d 120.]

### A. Mishandling of Estate Funds.

This case is somewhat similar to the matter of *Grievance Administrator v. Frederick A. Petz,* 99–102–GA (ADB 2001) (disbarment is the presumptively appropriate discipline for intentional conversion of client funds and should be imposed absent compelling mitigation). Like respondent, Mr. Petz did not intend to permanently deprive the rightful owners of their funds which he "invested" in his partnership without authorization. However, distinctions between that case and this one include the fact that *Petz* involved *deliberate conversion* of client funds, and that a violation of MRPC 1.15 was found by the panel and not contested on review.

Also relevant is *Grievance Administrator v. Ronald P. Derocher,* 99–98–GA (ADB 2000), appropriately cited for the proposition that the absence of an intent to permanently deprive the rightful owner of his or her funds is no defense to misappropriation. Again, however, *Derocher* involved a violation of MRPC 1.15.

Because client funds are not involved, ABA Standard 4.1 is inapplicable to the misconduct here. *Grievance Administrator v. Rodney Watts,* 05–151–GA (ADB 2007). However, the Administrator urged the panel to apply ABA Standard 4.11 and disbar respondent, arguing that the conduct here is analogous to that described in Standard 4.11, which provides: "Disbarment is generally appropriate when a lawyer knowingly converts client property and causes injury or potential injury to a client."

We do not disagree with the tenor of the Administrator's argument that the intentional misappropriation of funds belonging to a non-client third party should, as a general proposition, be considered to be as serious as the theft of client funds. See, e.g., *Watts, supra* (comparing ABA Standards with proposed Michigan Standards and concluding "it is untenable to give this respondent a 'break' simply because he stole money belonging to another lawyer rather than money belonging to a client"). However, as we have noted, the hearing panel did not find a violation of MRPC 1.15, misappropriation, embezzlement or theft, and these findings and conclusions are not challenged on review. Rather, the Grievance Administrator's brief on appeal characterizes this matter as follows, "Respondent loaned estate monies to himself without court approval and with no notice to interested parties in violation of the California Probate Code. Respondent told no one except his father (his law partner) about the loan."

The panel also did not find a violation of criminal law, as we have noted above, and so did not apply ABA Standard 5.11(a) which provides that disbarment is generally appropriate when

a lawyer engages in serious criminal conduct, a necessary element of which includes intentional interference with the administration of Justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or theft; or the sale, distribution or importation of controlled substances; or the intentional killing of another; or an attempt or conspiracy or solicitation of another to commit any of these offenses[.]

On review, the Administrator argues that disbarment would be appropriate under ABA Standard 5.11(a). However, in light of the panel's determination that the loan did not rise to the level of theft or misappropriation, it does not appear that this Standard is clearly applicable.

We emphasize, however, that lawyers are bound to act as fiduciaries whenever they handle funds of a client or another. Not infrequently lawyers serve—pursuant to agreement, court order or otherwise—as executors, personal representatives, trustees, agents or in other such fiduciary capacities. Prior to and after the *Lopatin* Court's adoption of the ABA Standards for Imposing Lawyer Sanctions in 2000, discipline for conversion of funds held in such roles has ranged from a suspension requiring reinstatement proceedings to disbarment. See, e.g., *Neaton, supra,* n. 4 (revocation), *Grievance Administrator v. Myles B. Hoffert,* 99–79–GA (HP Consent 2003) (Panel imposed three years by consent for respondent's use of trust funds for business entities and personal use while serving as trustee), *Grievance Administrator v. William J. Conlin,* 93–215–GA (HP 1994) (One year suspension where respondent misappropriated $28,000 from an account held in his capacity as a trustee and repaid several months later), *Grievance Administrator v. Peter B. Short* (HP 1988) (Revocation for mishandling of two estates, which included false accountings, commingling, misappropriation, i.e., "investing" funds in his own name allegedly on behalf of the beneficiaries).

While we defer to the panel's uncontested findings in this case, we wish to make it very plain that, in general, a secret loan arrangement by a lawyer in violation of fiduciary duties is serious misconduct. Indeed, because "the likelihood of actual embezzlement is so great, and the policy of professional responsibility in protecting the client from such risks is so strong,"[8] such conduct should, in the future, generally be regarded as tantamount to knowing conversion.

## B. Misrepresentation.

Count One of the formal complaint alleged that respondent's "knowing and material misrepresentations to the probate court that he had cash on hand belonging to the estate of $258,888.23, were untrue, and were made in violation of MCR 9.104(A)(1)–(4), MRPC 3.3(a)(1), (2) and (4), and MRPC 8.4(a)–(c)." The hearing panel found that these charges of misconduct were established. Specifically, the panel found that respondent "knew at the time that he made the representation to the California probate court that he did not have cash on hand in this amount." In light of these allegations and findings regarding respondent's mental state, the panel correctly applied Standard 6.12 (suspension generally appropriate for submission of knowingly false documents or statements to a court). However, we agree with the Administrator that the discipline should be increased. The misrepresentations in this case were at least as serious as those in *Grievance Administrator v. Russell G. Slade*, ADB 150–89 (ADB 1991) (three year suspension for respondent's failure to inform the court and opposing parties of the death of his client, the plaintiff, in pending litigation).

Our opinion in *Slade, supra,* is also apposite with respect to the misrepresentation to California counsel in the probate proceedings. We note the panel's finding that respondent made intentionally false, misleading and deceptive statements to two California attorneys and that Standard 5.11(b) provides that disbarment is the generally appropriate sanction for such conduct when it "seriously adversely reflects on the lawyer's fitness to practice." The panel did not make an express finding as to this point. However, the panel did find, in applying other standards, that suspension was appropriate, in part because potential injury was caused by respondent's conduct. We must also square the allegations in Count Two with those in Count One pertaining to misrepresentation which are essentially similar and were alleged and found to involve a "knowing" rather than intentional state of mind. Finally, as we are directed to do by *Lopatin,* we consider Michigan precedent, in particular *Slade,* and we conclude that a lengthy suspension is appropriate.

We have also considered the aggravating and mitigating factors identified by the panel and the parties. We note respondent's previous 30–day suspension for neglect and several admonitions for similar conduct. We also acknowledge that respondent made restitution with interest, or, rather, repaid the "loan." However, respondent's argument that injury or potential injury was nonexistent because the loan was secured by the "standing offer of settlement" in the Kowal litigation merits little credence for reasons too obvious to discuss.

## IV. Conclusion.

Taking into account all of the factors set forth in the ABA Standards and in *Lopa-*

---

8. *Grievance Administrator v. John T. McCloskey,* 94–175–GA (ADB 1995) (quoting *Louisiana State Bar Association v. Krasnoff,* 488 So.2d 1002, 1005 (La.1986))

*tin,* including the nature of the misconduct found by the panel, the proofs and findings as to respondent's mental state, the degree of harm resulting from respondent's conduct, aggravating and mitigating factors, and applicable precedent, we conclude that the circumstances of this particular case warrant an increase in discipline to a suspension of four years.

Board members William P. Hampton, George H. Lennon, Hon. Richard F. Suhrheinrich, William J. Danhof, and William L. Matthews, C.P.A. concur in this decision.

Board members Lori McAllister, Rev. Ira Combs, Jr., and Billy Ben Baumann, M.D. did not participate.

Board member Andrea L. Solak was voluntarily recused.

### STATE OF MICHIGAN

#### ATTORNEY DISCIPLINE BOARD

[SEAL]

MEMBERS

LORI McALLISTER

*CHAIRPERSON*

WILLIAM J. DANHOF

*VICE-CHAIRPERSON*

WILLIAM L. MATTHEWS, CPA

*SECRETARY*

GEORGE H. LENNON

BILLY BEN BAUMANN, M.D.

HON. RICHARD F. SUHRHEINRICH

ANDREA L. SOLAK

THOMAS G. KIENBAUM

EILEEN LAPPIN WEISER

JOHN F. VAN BOLT

*EXECUTIVE DIRECTOR*

MARK A. ARMITAGE

*DEPUTY DIRECTOR*

JENNIFER M. PETTY

*LEGAL ASSISTANT*

271 WEST FORT ST. SUITE 1410 DETROIT, MICHIGAN 48226–3236

PHONE: 313–963–5553

FAX: 313–963–5571

WWW.ADBMICH.ORG

### FINAL NOTICE OF SUSPENSION

Case No. 05–79–GA

**Notice Issued: January 16, 2008**

Carl M. Weideman, III, P47032, Grosse Pointe Woods, Michigan, by the Attorney Discipline Board, increasing a suspension of 90 days ordered by Tri–County Hearing Panel # 22 to a suspension of 4 years.

1. Suspension—4 Years
2. Effective October 27, 2007

The hearing panel found that respondent breached his fiduciary obligations as executor of a California decedent's estate by loaning estate funds to himself and/or his law firm to finance litigation and to pay personal debts and that he made misrepresentations regarding the availability of the funds to counsel, a court in California and to the Grievance Administrator, The panel ordered a suspension of 90 days. The Grievance Administrator petitioned for review and respondent filed a cross-petition for review. In an opinion issued September 28, 2007, the Attorney Discipline Board affirmed the hearing panel's findings of misconduct but modified the order of discipline to require a suspension of 4 years.

The respondent filed an application for leave to appeal in the Supreme Court. The Court denied respondent's motion for a stay of discipline and, on January 8, 2008, the Court denied respondent's appli-

cation for leave to appeal. Total costs were assessed in the amount of $7,713.69.

/s/ John F. Van Bolt
John F. Van Bolt

Dated: *JAN 16, 2008*

## STATE OF MICHIGAN

### Attorney Discipline Board

GRIEVANCE ADMINISTRATOR, Attorney Grievance Commission, Petitioner,

v

CARL M. WEIDEMAN, III, P 47032, Respondent.

Case No. 07–162–GA

### *ORDER OF REVOCATION & RESTITUTION*

Issued by the Attorney Discipline Board

Tri–County Hearing Panel # 15

This matter is before the panel upon the filing of Formal Complaint 07–162–GA charging that respondent, Carl M. Weideman, III, has committed acts of professional misconduct warranting discipline. The panel has filed its report which includes application of the American Bar Association's Standards for Imposing Lawyer Sanctions, its findings and conclusions as to misconduct and discipline, and being otherwise fully advised;

**NOW THEREFORE,**

**IT IS ORDERED** that respondent's license to practice law in Michigan is **REVOKED COMMENCING *JULY 8, 2008.*** and until further order of the Supreme Court, the Attorney Discipline Board or a hearing panel, and until respondent complies with the requirements of MCR 9.123(B) and (C) and MCR 9.124.

**IT IS FURTHER ORDERED** that the effective date of this order is *July 8, 2008.*

**IT IS FURTHER ORDERED** that respondent shall, within 90 days (on or before *September 16, 2008*) pay restitution as follows:

| | | | |
|---|---|---|---|
| 1. | Gazmend Dervishaj | – | $3,000.00 |
| 2. | Klodian Yzo | – | $1,200.00 |
| 3. | Dionis Kasolli | – | $2,500.00 |
| | **TOTAL:** | | **$6,700.00** |

Respondent shall file written proof of payment with the Attorney Grievance Commission and the Attorney Discipline Board within 10 days of the payment of restitution to each person.

**IT IS FURTHER ORDERED** that respondent shall not be eligible for reinstatement in accordance with MCR 9.123(A) or (B) unless respondent has fully complied with the restitution provisions of this order.

**IT IS FURTHER ORDERED** that from the effective date of this order and until reinstatement in accordance with the applicable provisions of MCR 9.123, respondent is forbidden from practicing law in any form; appearing as an attorney before any court, judge, justice, board, commission or other public authority; or holding himself out as an attorney by any means.

**IT IS FURTHER ORDERED** that respondent shall, in accordance with MCR 9.119(A), within seven days after the effective date of this order, notify all of his active clients, in writing, by registered or certified mail, return receipt requested, of the following:

1. the nature and duration of the discipline imposed;

2. the effective date of such discipline;

3. respondent's inability to act as an attorney after the effective date of such discipline;

4. the location and identity of the custodian of the clients' files and rec-

ords which will be made available to them or to substitute counsel;

5. that the clients may wish to seek legal advice and counsel elsewhere; provided that if respondent is a member of a law firm, the firm may continue to represent each client with the client's express written consent;

6. the address to which all correspondence to respondent may be addressed.

**IT IS FURTHER ORDERED** that in accordance with MCR 9.119(B), respondent must, on or before the effective date of the order, in every matter in which respondent is representing a client in litigation, file with the tribunal and all parties a notice of respondent's disqualification from the practice of law.

**IT IS FURTHER ORDERED** that respondent shall, within 14 days after the effective date of the order, file with the Grievance Administrator and the Attorney Discipline Board an affidavit of compliance as required by MCR 9.119(C).

**IT IS FURTHER ORDERED** that respondent's conduct after the entry of this order but prior to its effective date, shall be subject to the restrictions set forth in MCR 9.119(D); and respondent's compensation for legal services shall be subject to the restrictions described in MCR 9.119(F).

**IT IS FURTHER ORDERED** that respondent shall, on or before *July 8, 2008*, pay costs in the amount of *$2.746.01*. Check or money order shall be made payable to the State Bar of Michigan, but submitted to the Attorney Discipline Board [211 West Fort St., Ste. 1410, Detroit, MI 48226] for proper crediting. (See attached instruction sheet).

**ATTORNEY DISCIPLINE BOARD**

Tri–County Hearing Panel # 15

By: /s/ Miles A. Hurwitz
Miles A. Hurwitz, Chairperson

DATED: June 16, 2008

STATE OF MICHIGAN

**Attorney Discipline Board**

GRIEVANCE ADMINISTRATOR, Attorney Grievance Commission, Petitioner,

v

CARL M. WEIDEMAN III, P 47032, Respondent.

Case No. 07–162–GA

*REPORT OF TRI–COUNTY HEARING PANEL # 15*

**PRESENT:** Miles A. Hurwitz, Chairperson

Robert S. Gazall, Member

Robert L. Willis, Member

**APPEARANCES:** Nancy R. Alberts, Associate Counsel for the Attorney Grievance Commission

Carl M. Weideman, III, In pro per

## I. *EXHIBITS*

| | |
|---|---|
| Petitioner's Exhibit 1: | Sixth Circuit Docket Statement re: Dervishaj |
| Petitioner's Exhibit 2: | Weideman & Weideman, P.C. IOLTA Statement |
| Petitioner's Exhibit 3: | Transcript of Respondent's Sworn Statement, 6/13/07 |
| Petitioner's Exhibit 3A: | Transcript of Respondent's Sworn Statement, 9/14/07 |
| Petitioner's Exhibit 4: | Correspondence from Respondent to Yzo, 4/7/04 |
| Petitioner's Exhibit 5: | Correspondence from Respondent to BIA |
| Petitioner's Exhibit 6: | Correspondence from Atty Ayad to Respondent, 4/30/07 |
| Petitioner's Exhibit 7: | Correspondence from Atty Lahti to Respondent, 9/25/06 |
| Petitioner's Exhibit 8: | Excerpts from Kasolli Immigration File |
| Petitioner's Exhibit 9: | List of Respondent's Prior Misconduct |
| Petitioner's Exhibit 9A: | Board Opinion, GA v. Weideman, 05–79–GA |
| Petitioner's Exhibit 10: | Docket Sheet from American Construction v. Weideman, 06–607687–CZ |

## II. *WITNESSES*

Namir Daman

Gazmend Dervishaj

Bette Jean Lahti

Zeina Makki

## III. *PANEL PROCEEDINGS*

On October 31, 2007, the Grievance Administrator filed a three-count complaint alleging that respondent neglected three legal matters; failed to act with reasonable diligence and promptness, failed to keep the clients reasonably informed, failed to explain a matter to the extent reasonably necessary to permit the client to make informed decisions, failed to deposit client funds in an IOLTA account, failed to return unearned fees upon termination of representation, engaged in conduct involving dishonesty, fraud, deceit and misrepresentation, and violated the Rules of Professional Conduct. Respondent's conduct is alleged to be in violation of MCR 9.104(A)(4) and Michigan Rules of Professional Conduct 1.1(c), 1.3, 1.4(a), 1.4(b)(a), 1.15(d), 1.16(d), and 8.4(a) and (b). All three counts related to respondent's representation of three clients in their individual immigration cases.

The matter was assigned to Tri–County Hearing Panel # 15 and a hearing was scheduled for December 20, 2007 pursuant to MCR 9.115(G). On November 28, 2007, respondent's default for failure to answer the formal complaint was filed. On December 6, 2007, respondent filed a motion to set aside the default, extend the time to file an answer and enter a stay of proceedings pending the resolution of an application for leave to appeal to the Michigan Supreme Court of a prior disciplinary order. On December 13, 2007, the panel granted, in part, and denied, in part, respondent's motion. This panel set aside the default, however, respondent was ordered to file an answer within twenty-one days and an affidavit of facts establishing a meritorious defense. The panel adjourned the hearing but denied a stay of proceedings.

On January 2, 2008, respondent filed an answer to the formal complaint. With respect to Count I, related to Gazmend Dervishaj's immigration matter, respondent admitted that he was retained to file an appeal in the Sixth Circuit Court of Appeals. Respondent admitted that he was required to file the client's brief on appeal on November 7, 2005. He further admitted that on February 21, 2006, the Court dismissed Dervishaj's appeal for failure to file a brief on appeal. Respondent denied that between February 21, 2006 and November 28, 2006, he represented to the client that his matter was still pending. Further, respondent admitted that he did not place the $3,000.00 previously paid fee in a client trust account. Respondent also admitted that he did not return unearned fees to Dervishaj.

As to the charges in Count II, all related to Klodian Yzo's immigration matter, respondent admitted that in 2004, Yzo paid respondent $1,200.00 to file a motion to reopen his immigration matter. Respondent further admitted that he never filed such a motion. Respondent affirmatively stated that a motion was never filed because Yzo failed, after being requested on three occasions, to provide evidentiary support for his motion to reopen. Respondent admitted that he never placed the $1,200.00 fee in a client trust account. Respondent denied that he failed to return unearned fees to Yzo. Respondent further denied that he made false representations to Yzo that he had filed the motion to reopen.

The allegations in Count III were substantially similarly to those pled in Counts

I and II, however, they related to Dionis Kasolli's immigration matter. Respondent admitted that he was paid $2,500.00 in March of 2005, to file an appeal and brief with the Board of Immigration Appeals (BIA) on Kasolli's behalf. Respondent denied that he failed to file a brief with the B1A and further, that the appeal was dismissed by the BIA for failing to file the brief. He also denied that he failed to notify Kasolli of the dismissal. Respondent admitted that he did not file a motion to reopen the matter after being notified of the dismissal, but explained that he had been contacted by two other attorneys claiming to represent Kasolli during the time in which a motion to reopen could have been filed. Respondent admitted that he did not deposit the $2,500.00 in a client trust account, however, he denied that he failed to return unearned fees and failed to provide the client file to subsequent counsel. Respondent also denied that he told subsequent counsel that the matter was still pending in the Sixth Circuit or that he failed to file the requisite brief.

On February 7, 2008, petitioner filed a motion to amend the complaint to add a charge that respondent, in violation of the panel's order, failed to file an affidavit of meritorious defense with his answer to the complaint. An order granting the motion to amend was entered on February 12, 2008.

The hearing in this matter was held on April 3, 2008. At that time, petitioner moved to reinstate the default against respondent for failure to file an affidavit of meritorious defense, a condition imposed at the time the panel set aside the original default. (Tr 04/03/08, pp 6–7.) The panel denied the motion to reinstate the default in light of respondent's filing of an answer to the complaint. (Tr 04/03/08, p 12.) Respondent failed to attend the April 3, 2008,

hearing. The hearing was briefly adjourned and phone contact was made with respondent three times. Respondent claimed that his notice of hearing indicated that the hearing was set for the following day. Respondent indicated that he would not be attending the hearing which, thereafter, proceeded in his absence. (Tr 04/03/08, pp 9–11.)

The panel received the testimony of the Grievance Administrator's witness, Gazmend Dervishaj (Count I), who testified that in March of 2005, he hired and paid respondent $3,000.00 to file an appeal on his behalf. (Tr 04/03/08, p 19.) He had been in the country as a foreign exchange student and, after this status expired, he attempted to seek political asylum. (Tr 04/03/08, p 20.) Dervishaj frequently called respondent about his case. Respondent repeatedly told him to "sit tight" and that he would get a call as soon as respondent heard something. (Tr 04/03/080000, p 21.) When Dervishaj became concerned about his appeal, he contacted, Namir Daman, another immigration attorney, in November of 2006. (Tr 04/03/08, pp21, 23, 32.) Daman testified that he retrieved the docket sheet from PACER, the online public access service that allows users to obtain docket information. (Tr 04/03/08, p 32.) In Daman's opinion, most immigration attorneys would know how to use this service. (Tr 04/03/08, p 40.)

From the docket sheet, Daman discovered that Dervishaj's appeal had been dismissed on February 21, 2006, for failure to file the brief on appeal. (Tr 04/03/08, p 33.) With the documentation in hand, Dervishaj called respondent on a speaker phone to inquire into the status of his case. (Tr 04/03/08, p 21–22.) Dervishaj and Daman both heard respondent claim that the case was still pending in the Court of Appeals. (Tr 04/03/08, pp 21, 36.) Dervishaj testified that respondent had never

returned any money to him but he admitted that he had not requested the return of money. (Tr 04/03/08, pp 23, 26.) When Dervishaj confronted respondent about the dismissal of his case, respondent shook his head and said, "I know, I know." Then he said, "We'll take care of it." (Tr 04/03/08, pp 28–29.)

Daman testified that by filing a *Lozada* motion, arguing ineffective assistance of counsel, he was able to get Dervishaj's appeal reinstated. (Tr 04/03/08, pp 37–38, 48.) However, during respondent's representation, when the appeal was dismissed in February of 2006, Dervishaj was deemed a fugitive. He could have been picked up, detained and deported at any time. (Tr 04/03/08, pp 33–34.)

After Dervishaj and Daman testified, attorney Bette Jean Lahti testified regarding respondent's representation of Dionis Kasolli (Count III). Kasolli would not be testifying as he had been picked up by the Immigration Service and was currently being held in a detention facility. (Tr 04/03/08, p 53.) Lahti's representation of Kasolli began on September 25, 2006 after he was referred to her by attorney James Elsman. Lahti spoke with respondent on that day and he admitted that Kasolli's appeal had been dismissed for failure to file a brief which he had been paid to prepare. (Tr 04/03/08, pp 58–59.) Later, Lahti learned that the BIA had issued its decision on June 26, 2006, dismissing Kasolli's appeal for failing to file a brief on appeal. (Exhibit 8.) Respondent misled her and other attorneys to believe that the dismissal was older than that. In Lahti's opinion, had respondent been forthcoming to her and other attorneys, a motion to reopen could have been filed in a timely manner. (Tr 04/03/08, p 65.) According to Lahti, respondent knew that the appeal was in jeopardy because in August of 2006, he received a "bag and baggage" letter,

which notified him that because of the dismissal, Kasolli was at risk of being deported. (Tr 04/03/08, pp 70–71.) Lahti also explained that respondent filed a timely appeal, however, the brief that was due on March 14, 2006, was never filed. (Tr 04/03/08, pp 75–77.) Lahti made several attempts to get all or part of Kasolli's file from respondent. Respondent failed to cooperate. (Tr 04/03/08, pp 55, 59.)

After Lahti's testimony, the Grievance Administrator offered the testimony of attorney Zeina Makki in support of the allegations made in Count II of the complaint relative to respondent's representation of Klodian Yzo. Yzo would not be available to testify on his own behalf as he had been deported to Albania. (Tr 04/03/08, p 91.) Makki assisted attorney Nabih Ayad in the subsequent representation of Yzo when the client came to them in April of 2007. (Tr 04/03/08, pp 90–91, 99.) At that time, Yzo was "out of status," which meant that because he had no current visa and no appeal was pending, he was deportable. (Tr 04/03/08, p 102.) Makki picked up Yzo's file from respondent. She was specifically looking for a videotape, original birth certificate and a news article provided to respondent by Yzo in 2004, which would be the factual support for the motion to reopen on the grounds of changed country conditions. (Tr 04/03/08, pp 95–96, 107.) These items were not in the file and respondent claimed that he had misplaced them during a move. (Tr 04/03/08, p 96.) She eventually got the things from respondent.

When Makki reviewed the materials provided, she found a document dated August 15, 2004 (Exh. 5), which purported to be a cover letter to the BIA representing that a motion to reopen was accompanying the letter for filing. (Tr 04/03/08, p 103.) When Makki contacted the BIA to ascertain whether respondent had filed a motion

to reopen the case as he was hired to do, she was informed that no motion had been filed. (Tr 04/03/08, p 98.) Although respondent claimed in his answer that he did not file a motion to reopen because Yzo had not provided requested evidentiary materials, Makki felt that there was enough information in the file eventually provided to her by respondent, to support the filing of such a motion. (Tr 04/03/08, p 104.)

Although respondent chose not to attend the hearing, two of his sworn statements taken prior to the filing of the complaint were admitted into evidence. (Exhibits 3 and 3A.) On June 13, 2007, respondent testified that Dervishaj paid him $3000.00 in March of 2005. (Exh. 3, pp 4–5.) Respondent filed a petition for review and an extension of time because an administrative order was late in coming. (Exh. 3, p 4.) Respondent admitted that after being granted one extension, the brief in Dervishaj's case was due on November 7, 2005. Respondent admitted that he never filed a brief but explained that the client had decided to abandon the appeal and attempt to "adjust his status" through an alternative avenue. (Exh. 3, p 6.) When confronted with the inconsistency between this position and the position respondent took in response to the investigation (that Dervishaj had a new lawyer), respondent back tracked and said that it was a "presumption on his part" that Dervishaj was going to seek an alternative route rather than pursue the appeal. (Exh. 3, p 7.) Respondent then testified that Dervishaj told him in June of 2005 that he was hiring another attorney; at that point, respondent decided to do nothing else on the file. (Exh. 3, pp 7–8.)

Respondent did not send the client a refund of his fee because the brief he was hired to prepare was "about 90 percent done." Respondent felt that he had earned the entire $3000.00. (Exh. 3, p 8.) Respondent did not recall speaking to Dervishaj by telephone on November 28, 2006 and he never told Dervishaj that the case was still pending after it had been dismissed. (Exh. 3, p 10.) Respondent stated in his response to the request for investigation, that because he now knew that Dervishaj was unhappy, he had filed a motion to open the immigration matter in an attempt to get the case reinstated. (Exh. 3, p 11.) When asked why the court's docket sheet did not reflect the filing of such a motion, respondent explained that it is possible that the court rejected his attempt to file because he was no longer the attorney of record. (Exh. 3, p 13.) Respondent then stated that the UPS receipt he provided to the GA was proof that he had attempted to file the brief. However, when confronted with date discrepancies, respondent admitted that the UPS receipt he sent the GA was probably for another case. (Exh. 3, p 16.)

With respect to Yzo's matter, respondent admitted that Yzo paid him $1,200.00 to file a motion. (Exh. 3, p 23.) Respondent never filed the motion because Yzo failed to provide the requested materials that would form the basts of a motion to reopen. (Exh. 3, pp 23–24.) Respondent did some preparation work in Yzo's file and he considered some of the $1200.00 unearned fees but he did not know how much as he had not prepared a statement. By a letter dated April 30, 2007, respondent knew that Yzo had retained new counsel. (Exh. 3, p 27.) Respondent did not return unearned fees to Yzo because he learned that Yzo had been arrested and he assumed that if Yzo wanted a refund of fees, his new attorney would tell respondent where to find Yzo. The attorney never did this. (Exh. 3, pp 26–27.) Respondent admitted that the $1,200.00 was not in a trust account. He further stated that he would prepare a bill and whatever

balance was owed to Yzo he would pay it. (Exh. 3, p 28.) Respondent admitted that the $1,200.00 was the client's money until he earned it and that client's money should be in a trust account. (Exh. 3, p 28.) Although Yzo stated in his request for investigation that he was told by respondent that the motion to reopen had been filed, respondent denied having made this representation to the client. (Exh. 3, p 31.)

When the taking of respondent's sworn statement resumed on September 4, 2007, respondent once again admitted that he still had not returned unearned fees to Yzo, that he did not place any of the unearned fees in a trust account, and he did not know where Yzo was to return the money. (Exh. 3A, pp 41–44.) With respect to client Kasolli's immigration matter, respondent admitted that the client paid him $2,500 to file and appeal with the BIA. (Exh. 3A, p 50.) He filed an appearance and a notice of appeal. (Exh. 3A, p 31.) Respondent received the briefing schedule from the court which provided that the brief was due on March 14, 2006. (Exh. 3A, p 52.) Respondent would know that the court received the brief because he would eventually receive a decision. (Exh. 3A, p 52.) Respondent claimed that he filed a brief and sent a copy to opposing counsel on March 8, 2006. (Exh. 3A, pp 52–53.) Respondent looked through his file and confirmed that he had not received a decision in the Kasolli matter. (Exh. 3A, p 53.) Respondent admitted that a year and a half after filing the brief in the BIA, he received a call from Elsman saying that he had been retained by Kasolli and that the client was going to take a different "tactic." (Exh. 3A, 55.) A few days latter, respondent was contacted by Kasolli's new attorney, Lahti. (Exh. 3A, pp 53–55.) Lahti told respondent that the case had been dismissed. (Exh. 3A, p 54.) Respondent denied that he told Lahti that he had

failed to file a brief. (Exh. 3A, p 54.) Respondent did not recall if Kasolli's $2,500.00 was ever placed into a trust account. (Exh. 3A, p 62.) Further, respondent did not feel that it was necessary to check on the filing of Kasolli's brief because sending and receiving a brief was so routine. (Exh. 3A, p 66.)

At the conclusion of the testimony, the panel considered petitioner's closing argument, then took a recess and returned with a finding of misconduct. Thereafter, the sanction phase began with counsel for the Grievance Administrator introducing evidence of six admonitions and two suspensions respondent had previously received (exhibits 9 and 9A). This prior misconduct is summarized below. After precluding proffered evidence of other uncharged acts of alleged misconduct, the panel directed counsel for the Grievance Administrator to file a brief addressing the issues of misconduct and discipline. Counsel for the Grievance Administrator was given twenty-one days after the preparation of the hearing transcript to file a brief. By letter dated April 10, 2008, the panel directed that the Administrator's brief would be due on May 1, 2008 and that the respondent would be entitled to file a brief on or before May 15, 2008.

On May 1, 2008, counsel for the Grievance Administrator filed the requested brief. In addition to recapping the evidence that was presented at the hearing, counsel conceded that with respect to the allegations of misconduct in the representation of Yzo, the evidence did not prove that respondent failed to keep the client reasonably informed, failed to explain a matter to the client, and engaged in conduct involving, dishonesty, fraud, deceit and misrepresentation. (First Amended Formal Complaint, ¶¶ 27(e), (f) and (g).) Counsel further conceded that evidence was not presented to establish that respon-

dent knowingly made a false statement of material fact to a third person (First Amended Formal Complaint, ¶ 45(g)). Counsel then argued for revocation of respondent's license to practice law. Respondent has not filed a response to the Grievance Administrator's brief as of the date of this report.

## IV. *FINDINGS AND CONCLUSIONS REGARDING MISCONDUCT*

As to Count I of the Amended Formal Complaint, we find that the allegations of misconduct were proven. Respondent neglected a legal matter entrusted to him when he failed to file the brief to perfect Dervishaj's immigration appeal. Thereafter, not only did respondent fail to keep the client reasonably informed, he made material misrepresentations to Dervishaj regarding the status of the action. Further, we conclude that respondent failed to preserve the client's funds and failed to return unearned fees, which was essentially the entire amount paid by the client. We reject respondent's claim that he earned the $3,000.00 fee paid because he completed ninety percent of the brief on appeal. His testimony to this effect in his sworn statement simply lacks credibility. We reach this conclusion based, in part, upon the multiple and inconsistent explanations respondent gave for why he did not file the brief on appeal. Respondent's explanations ranged from his mere belief that the client had decided to change approaches to his legal matter to stating that Dervishaj had hired new counsel. Respondent's conduct constituted a violation of MRPC 1.1(c), 1.3, 1.4(a) and (b), 1.15(d), 1.16(d), 8.4(a) and 8.4(b) and MCR 9.104(A)(4).

We find that the allegations of misconduct In Count II, with respect to respondent's representation of Yzo, were similarly proven. Respondent was retained to file a motion to reopen Klodian Yzo's immigration case. The evidence established that this service was never performed and we reject, as implausible, respondent's explanation that Yzo did not provide him with requested materials to support a motion to reopen based upon changed country conditions. The evidentiary materials substitute counsel ultimately used to file a motion to reopen were provided to respondent in 2004. Respondent admitted that he did not perform the services for which he was retained, that he did not maintain Yzo's money in a trust account, and that he owed Yzo the return of some unearned fees. Based upon the testimony and evidence presented, the panel finds that respondent neglected legal matters entrusted to him, failed to act with reasonable diligence, failed to return unearned feels and failed to deposit client funds in an IOLTA account, in violation of MRPC 1.1(c), 1.3, 1.16(d), 1.15(d), 8.4(a) and (b) and MCR 9.104(A)(4).

Finally, this panel concludes that respondent engaged in misconduct during his representation of Dionis Kasolli in an immigration matter as set forth in Count III of the First Amended Formal Complaint. Kasolli paid respondent $2,500.00 to file an appeal and brief with the BIA. While respondent did file the appeal, the immigration matter was ultimately dismissed by the court for failure to file a brief on appeal. The evidence is conflicting with respect to whether respondent prepared and mailed a brief to the court. Attorney Lahti testified that respondent admitted to her that he did not file the brief. However, respondent asserted that he did prepare and mail the brief on appeal to the court and opposing counsel, but admitted that he never followed-up with the court to confirm receipt because it was a routine filing. Further, opposing counsel in the Kasolli matter filed a motion to

dismiss based, in part, on the failure to file a brief on appeal.

The more credible evidence supports the conclusion that respondent never mailed the brief and then made a false statement in his sworn testimony. In any event, the record established that no brief was received by the BIA. Even if respondent mailed the brief to the court, and was unaware that it had not been received, at some point he should have known that an irregularity had occurred as he received a "bag and baggage" letter from the BIA indicating that his client was at risk of being deported as no appeal was pending. At no time did respondent investigate these events, file a motion to reopen or contact his client. With respect to the issue of unearned fees, counsel for the Grievance Administrator admits that there was no direct evidence that respondent failed to return unearned fees to the client. Thus, based upon the evidence presented, this panel finds that respondent neglected a legal matter entrusted to him, failed to act with reasonable diligence, failed to keep his client reasonably informed about the status of a matter, and knowingly made a false statement in connection with his disciplinary matter, in violation of MRPC 1.1(c), 1.3, 1.4(a) and (b), 8.1(1), 8.4(a) and (b), and MCR 9.104(A)(4) and MCR 9.104(A)(6).

## V. *REPORT ON DISCIPLINE*

In deciding the level of discipline to be imposed in this matter, we are instructed by *Grievance Administrator v. Lopatin*, 462 Mich. 235, 612 N.W.2d 120 (2000), to employ the American Bar Association (ABA) Standards for Imposing Lawyer Sanctions. Pursuant to the Standards, we examine the duty respondent violated, respondent's mental state, and the actual or potential injury caused by respondent's conduct. Next, aggravating and mitigat-

ing factors are to be considered and, finally, we are directed to take into account "any other factors which may make the results of the foregoing analytical process inappropriate," including Michigan precedent in discipline cases. *Lopatin*, 462 Mich. at 248 n. 13, 612 N.W.2d 120.

Although there are several allegations of misconduct that have been proven, the gravamen of the misconduct alleged in each count is neglect, albeit neglect significantly compounded by a failure to return the unearned portion of fees paid in advance. Additionally, respondent has demonstrated a pattern of neglect with respect to client immigration matters. Respondent appears to be preying on particularly vulnerable clients. Respondent's conduct heightened this vulnerability. Because they had run out of "status," as one of the witnesses explained, these clients, unbeknownst to them, were fugitives. This subjected each client to the possibility of arrest, detention and deportation. Indeed, two of the clients have already experienced these consequences. While no one has argued that the clients' immigration issues would have been resolved more favorably if respondent had not committed misconduct, it is clear that the clients were denied an opportunity to explore their alternatives and/or have their legal status preserved pending appeals. Under the circumstances in this case, we concluded that the level of discipline should be governed by American Bar Association Standard 4.41 which provides:

> 4.41 Disbarment is generally appropriate when:
>
>       \*      \*      \*
>
> (b) a lawyer knowingly fails to perform services for a client and causes serious or potentially serious injury to a client; or

(c) a lawyer engages in a pattern of neglect with respect to client matters and causes serious or potentially serious injury to a client.

Because respondent knowingly failed to perform services for a client causing serious injury to the client, and he engaged in a pattern of neglect with respect to client matters, the misconduct committed warrants revocation of respondent's license.

Further, none of the aggravating or mitigating factors in ABA Standard 9.0 compel this panel to question this conclusion. Respondent's prior disciplinary offenses (9.22(a)) are significant and they illustrate a pattern of mishandling legal matters entrusted to him. Between the years 2000 and 2005, respondent has been admonished six times. At least five of these admonitions have been as a result of his neglect and/or lack of diligence. Several of the admonishments related to immigration matters. Respondent was suspended in April of 2007 for neglecting two immigration matters. Then, in November of 2007, respondent was suspended from the practice of law for four years related to his breach of fiduciary obligations regarding the deposit and availability of funds belonging to an estate and misrepresentations to counsel, a California court and the Grievance Administrator. The Michigan Supreme Court, on January 8, 2008, denied respondent's application for leave to appeal that suspension.

Respondent's selfish motive (9.22(b)) is clearly demonstrated by his failure to perform the work requested and then keeping the unearned fees. Respondent's conduct has been, at all times, solely in his self-interest. Not only has respondent's actions appeared to escalate over the years, they now evidence a pattern of misconduct (9.22(c)). Respondent has repeatedly failed to comply with the rules of the disciplinary process (9.22(e)). He failed to respond to the complaint in a timely fashion, failed to file an affidavit of meritorious defense which was a condition of setting aside the default and he failed to appear at the April 3, 2008 hearing. Finally, as discussed above, respondent's misconduct frequently involved clients who are particularly vulnerable. (Standard 9.22(h).) No evidence was presented from which we could conclude that any of the mitigating factors set forth in Standard 9.0 applied to this matter.

This panel, after considering the evidence presented and the brief submitted, concludes that respondent's license to practice law in the State of Michigan should be revoked. See *Grievance Administrator v. Paul S. Schaefer,* 01–140–GA (ADB 2004) (increasing 30–month suspension to revocation in matter involving serious neglect, lack of diligence and failure to communicate with clients coupled with failure to return unearned fees and aggravating factors which included prior disciplinary offenses and deception during the discipline proceedings). We further order that respondent shall, within 90 days, pay restitution to Gazmend Dervishaj in the amount of $3,000.00, Klodian Yzo in the amount of $1,200.00, and Dionis Kasolli in the amount of $2,500.00.

## VI. SUMMARY OF PRIOR MISCONDUCT

Admonitions:

August 25, 2000 Respondent "failed to take all necessary steps to ensure that ... clients' matters were not jeopardized."

October 29, 2001 Respondent failed to protect client's interests by notifying court of inability to communicate with client.

March 26, 2002 Neglect; competence.

June 24, 2004 Failure to act with reasonable diligence and promptness and failure to keep client reasonably informed about matter.

August 30, 2005 Failure to communicate.

October 2, 2007 Sharing fees with a non-lawyer.

Suspensions:

April 21, 2007 30–day suspension for neglecting two immigration matters. ADB No. 06–117–GA.

November 6, 2007 Four year suspension for breach of fiduciary duty, material misrepresentation to the probate court; making intentionally false, misleading and deceptive statements to other attorneys for the purpose of concealment of his conduct; making false, misleading and deceptive statements to the Grievance Administrator for the purpose of misleading and deceiving the Grievance Administrator; failure to handle estate assets in accord with fiduciary duties as personal representative of an estate under the California Probate Code. ADB No. 05–79–GA.

## VII. *ITEMIZATION OF COSTS*

Attorney Grievance Commission:

| | |
|---|---|
| (See Itemized Statement filed 6/12/08 ) | $ 684.26 |
| Attorney Discipline Board: | |
| Hearing held April 3, 2008 | $ 561.75 |
| Administrative Fee [MCR 9.128(B)(1) ] | $1,500.00 |
| **TOTAL:** | $2,746.01 |

## ATTORNEY DISCIPLINE BOARD

Tri–County Hearing Panel # 15

By: /s/ Miles A. Hurwitz

Miles A. Hurwitz, Chairperson

**DATED: June 16, 2008**

### State Of Michigan

### Attorney Discipline Board

**Grievance Administrator, Attorney Grievance Commission, State of Michigan,** Petitioner,

v

**Carl M. Weideman, III, P–47032,** Respondent.

**Case No. 07–162–GA**

### *Formal Complaint*

Petitioner, upon information and belief, states the following:

1. Respondent, Carl M. Weideman, III, P–47032, was licensed to practice law in Michigan in 1992, and by virtue of said license is a member of the State Bar of Michigan who is subject to the jurisdiction of the Michigan Supreme Court and the Attorney Discipline Board in matters of discipline for professional misconduct.

2. Respondent last maintained an office for the practice of law in the County of Wayne, State of Michigan.

3. As an attorney subject to the rules and regulations of the Michigan Supreme Court, Respondent is subject to the standards for discipline set forth in MCR 9.104(A).

### *Count One*

4. On or about March 26, 2005, Respondent was paid $3,000.00 by Gazmend Dervishaj to file an appeal with the Sixth Circuit Court of Appeals in Mr. Dervishaj's immigration matter.

5. On or about April 1, 2005, Respondent filed an appearance and petition for review in the Sixth Circuit Court of Appeals in *Dervishaj v. Gonzales,* 05–3387.

6. On or about August 1, 2005, the Court sent a briefing letter to Respondent, stating that his brief on behalf of petitioner Dervishaj was due September 12, 2005.

7. On September 19, 2005, Respondent filed a motion requesting that his brief be held in abeyance pending receipt of the administrative record.

8. On October 4, 2005, the Court sent a letter to Respondent notifying him that his motion was denied and that his brief was now due on November 7, 2005.

9. On February 21, 2006, the Court issued an order dismissing the appeal for Petitioner's failure to file a brief.

10. Between the dates of February 21, 2006 and November 28, 2006, Respondent told Mr. Dervishaj on more than two occasions that his matter was still pending.

11. Respondent never told Mr. Dervishaj that his matter was dismissed.

12. On or about November 28, 2006, Mr. Dervishaj consulted with another attorney and learned that his matter had been dismissed.

13. On or about November 28, 2006, Respondent told Mr. Dervishaj that the matter had not been dismissed and stated that the matter was pending.

14. Respondent did not place the $3,000.00 in his client trust account.

15. Respondent did not earn the fee paid to him.

16. Respondent knew on or before May 7, 2007 that Mr. Dervishaj had retained a new attorney.

17. Respondent did not return unearned fees to Mr. Dervishaj.

18. By reason of the conduct described above, Respondent engaged in the following professional misconduct:

(a) Neglecting a legal matter entrusted to him, in violation of MRPC 1.1(c);

(b) Failing to act with reasonable diligence and promptness in representing a client, in violation of MRPC 1.3;

(c) Failing to keep a client reasonably informed about the status of a matter and to comply promptly with reasonable requests for information, in violation of MRPC 1.4(a);

(d) Failing to explain a matter to the extent reasonably necessary to permit the client the make informed decisions regarding the representation, in violation of MRPC1.4(b)(a);

(e) Failing to deposit client funds in an IOLTA account in violation of MRPC 1.15(d) (formerly 1.15(a));

(f) Failing to return unearned fees upon termination of representation, in violation of MRPC 1.16(d);

(g) Violating or attempting to violate the Rules of Professional Conduct, in violation of MRPC 8.4(a) and MCR 9.104(A)(4); and,

(h) Engaging in conduct involving dishonesty, fraud, deceit, misrepresentation, or violation of the criminal law, where such conduct reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer, in violation of MRPC 8.4(b);

### *Count Two*

19. On or about July 17, 2004, Klodian Yzo paid Respondent $600.00 to file a motion to reopen his immigration matter.

20. Mr. Yzo paid an additional $600.00 shortly thereafter to pay the entire fee of $1,200.00.

21. Respondent did not file the motion to reopen.

22. Respondent did not place the money in his client trust account.

23. Respondent was notified on or about April 30, 2007 that Mr. Yzo had retained a new attorney.

24. Respondent did not return unearned fees to Mr. Yzo.

25. Throughout the representation, Respondent continuously told Mr. Yzo that he had filed the motion to reopen.

26. By reason of the conduct described above, Respondent has engaged in the following professional misconduct:

   (a) Neglecting a legal matter entrusted to him, in violation of MRPC 1.1(c);

   (b) Failing to act with reasonable diligence and promptness in representing a client, in violation of MRPC 1.3;

   (c) Failing to return unearned fees upon termination of representation, in violation of MRPC 1.16(d);

   (d) Failing to deposit client funds in an IOLTA account in violation of MRPC 1.15(d) (formerly 1.15(a));

   (e) Failing to keep a client reasonably informed about the status of a matter and to comply promptly with reasonable requests for information, in violation of MRPC 1.4(a);

   (f) Failing to explain a matter to the extent reasonably necessary to permit the client the make informed decisions regarding the representation, in violation of (g) MRPC 1.4(b);

   (g) Engaging in conduct involving dishonesty, fraud, deceit, misrepresentation, or violation of the criminal law, where such conduct reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer, in violation of MRPC 8.4(b); and,

   (h) Violating or attempting to violate the Rules of Professional Conduct, in violation of MRPC 8.4(a) and 9.104(A)(4).

### Count Three

27. On or about March 11, 2005 through March 25, 2005, Dionis Kasolli paid $2,500.00 to Respondent to file an appeal and brief with the Board of Immigration Appeals (BIA), in the matter entitled, *In re Dionis Kasolli*, A 97107846.

28. Respondent failed to file a brief on Mr. Kasolli's behalf with the BIA.

29. Opposing Counsel filed a motion to dismiss Mr. Kasolli's appeal because no brief had been filed.

30. On or about June 26, 2006, the matter was dismissed by the BIA for failure to file a brief.

31. Respondent did not notify Mr. Kasolli of the dismissal.

32. Respondent did not file a timely motion to reconsider or to reopen the matter after having been notified of the dismissal for failure to file a brief.

33. Respondent did not deposit the $2,500.00 in his trust account.

34. Respondent was informed on or about September 25, 2006 that Mr. Kasolli had hired a new attorney, Bette Jean Lahti, to handle his matter.

35. Respondent did not return unearned fees to Mr. Kasolli.

36. Respondent failed to provide his entire client file to Mr. Kasolli or Ms. Lahti, despite repeated requests to do so.

37. On or about September 22, 2007, Respondent told attorney James Elsman that Mr. Kasolli's matter was still pending in the Sixth Circuit Court of Appeals.

38. On or about September 25, Respondent admitted to Ms. Lahti that he did not file the brief In Mr. Kasolli's matter and that he had been notified of the dismissal.

39. On September 4, 2007, Respondent appeared at the offices of the Attorney Grievance Commission and testified under oath pursuant to the Commission's request for a sworn statement regarding this matter.

40. Respondent testified that he sent a brief in support of Mr. Kasolli's appeal to the BIA and to opposing counsel either by mail or by UPS.

41. Respondent did not send a brief in support of Mr. Kasolli's appeal to the BIA.

42. Respondent did not send a brief in support of Mr. Kasolli's appeal to opposing counsel.

43. If Respondent did mail a brief in support of Mr. Kasolli's appeal, he never confirmed that it was received by the BIA.

44. By reason of the conduct described above, Respondent has engaged in the following professional misconduct:

(a) Neglecting a legal matter entrusted to him, in violation of MRPC 1.1(c);

(b) Failing to act with reasonable diligence and promptness in representing a client, in violation of MRPC 1.3;

(c) Failing to return unearned fees and papers and property to which the client is entitled upon termination of representation, in violation of MRPC 1.16(d);

(d) Failing to deposit client funds in an IOLTA account in violation of MRPC 1.15(d) (formerly 1.15(a));

(e) Failing to keep a client reasonably informed about the status of a matter and to comply promptly with reasonable requests for information, in violation of MRPC 1.4(a);

(f) Failing to explain a matter to the extent reasonably necessary to permit the client the make informed decisions regarding the representation, in violation of MRPC 1.4(b);

(g) Knowingly making a false statement of material fact to a third person, in violation of MRPC 4.1;

(h) Knowingly making a false statement of material fact in connection with a disciplinary matter, in violation of MRPC 8.1(1) and making a knowing misrepresentation of any facts or circumstances surrounding a request for investigation, in violation of MCR 9.104(6);

(i) Engaging in conduct involving dishonesty, fraud, deceit, misrepresentation, or violation of the criminal law, where such conduct reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer, in violation of MRPC 8.4(b); and,

(j) Violating or attempting to violate the Rules of Professional Conduct, in violation of MRPC 8.4(a) and 9.104(A)(4).

45. Each of the acts and omissions set forth above constitute a separate breach by Respondent of his duty to conduct himself at all times, both personally and professionally, in conformity with the standards imposed upon members of the Bar as conditions for the privilege of practicing law in this State.

Wherefore, Respondent should be subjected to such discipline as may be warranted by the facts and circumstances of such misconduct.

Dated: October *31*, 2007

/s/ Robert L. Agacinski
**Robert L. Agacinski, P–10065**
Grievance Administrator

Attorney Grievance Commission

243 West Congress, Ste. 256

Detroit, Michigan 48226

(313)961–6585

**State Of Michigan**

**Attorney Discipline Board**

**Grievance Administrator, Attorney Grievance Commission, State of Michigan,** Petitioner,

v

**Carl M. Weideman, III, P–47032, Respondent.**

**ADB Case No.**

### First Amended Formal Complaint

Petitioner, upon information and belief, states the following:

1. Respondent, Carl M. Weideman, III, P–47032, was licensed to practice law in Michigan in 1992, and by virtue of said license is a member of the State Bar of Michigan who is subject to the jurisdiction of the Michigan Supreme Court and the Attorney Discipline Board in matters of discipline for professional misconduct.

2. Respondent last maintained an office for the practice of law in the County of Wayne, State of Michigan.

3. As an attorney subject to the rules and regulations of the Michigan Supreme Court, Respondent is subject to the standards for discipline set forth in MCR 9.104(A).

### Count One

4. On or about March 26, 2005, Respondent was paid $3,000.00 by Gazmend Dervishaj to file an appeal with the Sixth Circuit Court of Appeals in Mr. Dervishaj's immigration matter.

5. On or about April 1, 2005, Respondent filed an appearance and petition for review in the Sixth Circuit Court of Appeals in *Dervishaj v. Gonzales*, 05–3387.

6. On or about August 1, 2005, the Court sent a briefing letter to Respondent, stating that his brief on behalf of petitioner Dervishaj was due September 12, 2005.

7. On September 19, 2005, Respondent filed a motion requesting that his brief be held in abeyance pending receipt of the administrative record.

8. On October 4, 2005, the Court sent a letter to Respondent notifying him that his motion was denied and that his brief was now due on November 7, 2005.

9. Respondent did not file the brief in *Dervishaj v. Gonzales*, 05–3387 in the Sixth Circuit Court of Appeals.

10. On February 21, 2006, the Court issued an order dismissing the appeal for Petitioner's failure to file a brief.

11. Between the dates of February 21, 2006 and November 28, 2006, Respondent told Mr. Dervishaj on more than two occasions that his matter was still pending.

12. Respondent never told Mr. Dervishaj that his matter was dismissed.

13. On or about November 28, 2006, Mr. Dervishaj consulted with another attorney and learned that his matter had been dismissed.

14. On or about November 28, 2006, Respondent told Mr. Dervishaj that the matter had not been dismissed and stated that the matter was pending.

15. Respondent did not place the $3,000.00 in his client trust account.

16. Respondent did not earn the fee paid to him.

17. Respondent knew on or before May 7, 2007 that Mr. Dervishaj had retained a new attorney.

18. Respondent did not return unearned fees to Mr. Dervishaj.

19. By reason of the conduct described above, Respondent engaged in the following professional misconduct:

(a) Neglecting a legal matter entrusted to him, in violation of MRPC 1.1(c);

(b) Failing to act with reasonable diligence and promptness in representing a client, in violation of MRPC 1.3;

(c) Failing to keep a client reasonably informed about the status of a mat-

ter and to comply promptly with reasonable requests for information, in violation of MRPC 1.4(a);

(d) Failing to explain a matter to the extent reasonably necessary to permit the client the make informed decisions regarding the representation, in violation of MRPC 1.4(b)(a);

(e) Failing to deposit client funds in an IOLTA account in violation of MRPC 1.15(d) (formerly 1.15(a));

(f) Failing to return unearned fees upon termination of representation, in violation of MRPC 1.16(d);

(g) Violating or attempting to violate the Rules of Professional Conduct, in violation of MRPC 8.4(a) and MCR 9.104(A)(4); and,

(h) Engaging in conduct involving dishonesty, fraud, deceit, misrepresentation, or violation of the criminal law, where such conduct reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer, in violation of MRPC 8.4(b);

### Count Two

20. On or about July 17, 2004, Klodian Yzo paid Respondent $600.00 to file a motion to reopen his immigration matter.

21. Mr. Yzo paid an additional $600.00 shortly thereafter to pay the entire fee of $1,200.00.

22. Respondent did not file the motion to reopen.

23. Respondent did not place the money in his client trust account.

24. Respondent was notified on or about April 30, 2007 that Mr. Yzo had retained a new attorney.

25. Respondent did not return unearned fees to Mr. Yzo.

26. Throughout the representation, Respondent continuously told Mr. Yzo that he had filed the motion to reopen.

27. By reason of the conduct described above, Respondent has engaged in the following professional misconduct:

(a) Neglecting a legal matter entrusted to him, in violation of MRPC 1.1(c);

(b) Failing to act with reasonable diligence and promptness in representing a client, in violation of MRPC 1.3;

(c) Failing to return unearned fees upon termination of representation, in violation of MRPC 1.16(d);

(d) Failing to deposit client funds in an (OLTA account in violation of MRPC 1.15(d) (formerly 1.15(a)));

(e) Failing to keep a client reasonably informed about the status of a matter and to comply promptly with reasonable requests for information, in violation of MRPC 1.4(a);

(f) Failing to explain a matter to the extent reasonably necessary to permit the client the make informed decisions regarding the representation, in violation of MRPC 1.4(b);

(g) Engaging in conduct involving dishonesty, fraud, deceit, misrepresentation, or violation of the criminal law, where such conduct reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer, in violation of MRPC 8.4(b); and,

(h) Violating or attempting to violate the Rules of Professional Conduct, in violation of MRPC 8.4(a) and 9.104(A)(4).

### Count Three

28. On or about March 11, 2005 through March 25, 2005, Dionis Kasolli paid $2,500.00 to Respondent to file an

appeal and brief with the Board of Immigration Appeals (BIA), in the matter entitled, *In re Dionis Kasolli*, A 97107846.

29. Respondent failed to file a brief on Mr. Kasolli's behalf with the BIA.

30. *Opposing Counsel filed a motion to* dismiss Mr. Kasolli's appeal because no brief had been filed.

31. On or about June 26, 2006, the matter was dismissed by the BIA for failure to file a brief.

32. Respondent did not notify Mr. Kasolli of the dismissal.

33. Respondent did not file a timely motion to reconsider or to reopen the matter after having been notified of the dismissal for failure to file a brief.

34. Respondent did not deposit the $2,500.00 in his trust account.

35. Respondent was informed on or about September 25, 2006 that Mr. Kasolli had hired a new attorney, Bette Jean Lahti, to handle his matter.

36. Respondent did not return unearned fees to Mr. Kasolli.

37. Respondent failed to provide his entire client file to Mr, Kasolli or Ms. Lahti, despite repeated requests to do so.

38. On or about September 22, 2007, Respondent told attorney James Elsman that Mr. Kasolli's matter was still pending in the Sixth Circuit Court of Appeals.

39. On or about September 25, Respondent admitted to Ms. Lahti that he did not file the brief In Mr. Kasolli's matter and that he had been notified of the dismissal.

40. On September 4, 2007, Respondent appeared at the offices of the Attorney Grievance Commission and testified under oath pursuant to the Commission's request for a sworn statement regarding this matter.

41. Respondent testified that he sent a brief in support of Mr. Kasolli's appeal to the BIA and to opposing counsel either by mail or by UPS.

42. Respondent did not send a brief in support of Mr. Kasolli's appeal to the BIA.

43. Respondent did not send a brief in support of Mr. Kasolli's appeal to opposing counsel.

44. If Respondent did mail a brief in support of Mr. Kasolli's appeal, he never confirmed that it was received by the BIA.

45. By reason of the conduct described above, Respondent has engaged in the following professional misconduct:

(a) Neglecting a legal matter entrusted to him, in violation of MRPC 1.1(c);

(b) Failing to act with reasonable diligence and promptness in representing a client, in violation of MRPC 1.3;

(c) Failing to return unearned fees and papers and property to which the client is entitled upon termination of representation, in violation of MRPC 1.16(d);

(d) Failing to deposit client funds in an IOLTA account in violation of MRPC 1.15(d) (formerly 1.15(a));

(e) Failing to keep a client reasonably informed about the status of a matter and to comply promptly with reasonable requests for information, in violation of MRPC 1.4(a);

(f) Failing to explain a matter to the extent reasonably necessary to permit the client the make informed decisions regarding the representation, in violation of MRPC 1.4(b);

(g) Knowingly making a false statement of material fact to a third person, in violation of MRPC 4.1;

(h) Knowingly making a false statement of material fact in connection with a

253

disciplinary matter, in violation of MRPC 8.1(1) and making a knowing misrepresentation of any facts or circumstances surrounding a request for investigation, in violation of MCR 9.104(6);

(i) Engaging in conduct involving dishonesty, fraud, deceit, misrepresentation, or violation of the criminal law, where such conduct reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer, in violation of MRPC 8.4(b); and,

(j) Violating or attempting to violate the Rules of Professional Conduct, in violation of MRPC 8.4(a) and 9.104(A)(4).

46. Each of the acts and omissions set forth above constitute a separate breach by Respondent of his duty to conduct himself at all times, both personally and professionally, in conformity with the standards imposed upon members of the Bar as conditions for the privilege of practicing law in this State.

Wherefore, Respondent should be subjected to such discipline as may be warranted by the facts and circumstances of such misconduct.

Dated: February 7, 2008

/s/ Robert L. Agacinski
**Robert L. Agacinski, P–1006**
Grievance Administrator

Attorney Grievance Commission

243 West Congress, Ste. 256

Detroit, Michigan 48226

(313)961–6585